FREDERICK ALLMAN

*v.*

HAVANA, RANTOUL AND EASTERN RAILROAD COMPANY.

1. RAILWAY CORPORATION—*powers before stock subscribed.* A railway corporation formed under the general act of March 1, 1872, or the charter directors, can do such acts only as are necessary to set the association in motion as a corporation, until the whole number of shares of capital stock fixed in its articles of association have been subscribed. Until that is done, they can not make contracts, or incur liabilities for the construction of the contemplated road, in which no one of them may have had a pecuniary interest as a stockholder.

2. SAME—*right to make calls of stock.* Where a railway corporation was attempted to be formed under the act of March 1, 1872, and its capital stock fixed in its articles at $1,000,000, and the shares of capital stock fixed at 10,-000, of $100 each, it was *held,* that until the whole amount had been subscribed, the corporation could have no legal existence, and that until the whole stock was subscribed, the directors could not make any call or assessment on the shares of those who had subscribed.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. SOMERS & WRIGHT, for the appellant.

Messrs. SWEET & DAY, and Mr. BENJ. J. GIFFORD, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

This was an action commenced, originally, before a justice of the peace of Champaign county, by the Havana, Rantoul and Eastern Railroad Company, plaintiffs, and against Frederick Allman, defendant, to recover an instalment or assessment of ten per cent on his subscription of five hundred dollars to the capital stock of that company. There was a judgment for the plaintiffs for fifty dollars, being the amount of the assessment. On appeal to the circuit court by the defendant, the cause was submitted without a jury, and there was a like finding, and judgment for the plaintiffs, to reverse which the defendant appeals, and insists there was no power in the corporation to make this assessment, and no liability upon him to respond to it; and further, that he had no notice of the assessment before suit brought.

Appellees claim to be a corporation, under the law of March 1, 1872, and it is necessary to determine what powers and capacities that law conferred. After providing, in section 1, that any number of persons, not less than five, may become an incorporated company, for the purpose of constructing and operating a railroad, and, by section 2, that such persons shall organize by adopting and signing articles of incorporation, which shall be recorded in the office of the recorder of deeds in each county through or into which such road is proposed to be run, and in the office of the Secretary of State, section 3 prescribes the constituents of such articles as, first, the name of the proposed corporation; second, the places from and to which it is intended to construct the road; third, the place at which shall be established and maintained the principal business office of the corporation; fourth, the time of the commencement and the period of the termination of such corporation; fifth, the amount of the capital stock; sixth, the names and places of residence of the several persons forming the association for incorporation; seventh, the names of the members of the first board of directors, and in what officers or persons the

government of the proposed corporation and the management of its affairs shall be vested; and, eighth, the number and amount of shares in the capital stock of such proposed corporation. Section 4 provides, when the articles are filed and recorded, the persons named as corporators therein shall thereupon become and be deemed a body corporate, and shall thereupon be authorized to proceed to carry into effect the objects set forth in such articles, in accordance with the provisions of this act, and, as such corporation, shall have succession, and in their corporate name may sue and be sued, etc., may have a common seal, may declare the interests of its stockholders transferable, establish by-laws and make all rules and regulations deemed necessary for the management of its affairs. Section 5 limits its duration to fifty years. Section 6 provides for recording the by-laws, as provided with respect to recording the articles of incorporation. Section 7 provides for having and maintaining a public office, where transfers of its stock shall be made, and books be kept, in which shall be recorded the amount of capital stock subscribed, and by whom, the names of the owners of the stock, the number of shares held by each person, and the number by which the shares are designated, etc., the amount of the stock paid in, and by whom, etc.

It is contended by appellant that these sections are preliminary only, and for the purpose of setting the enterprise on foot, no power existing in their charter directors to incur liabilities by which the stockholders might be involved, and refers to section 8 to sustain this view. That section provides that all the corporate powers of every such corporation shall be vested in and be exercised by a board of directors, who shall be stockholders of the corporation, and shall be elected at the annual meetings of stockholders at the public office of such corporation, within this State. The number of such directors, the manner of their election and the mode of filling vacancies, shall be specified in the by-laws, and shall not be

changed except at the annual meetings of the stockholders. The first board of directors shall classify themselves, etc.

Section 13 provides that the directors of such corporation may require the subscribers to the capital stock to pay the amount by them respectively subscribed in such manner and in such instalments as they may deem proper. If any stockholder shall neglect to pay any instalment, as required by a resolution or order of such board of directors, the board shall be authorized to declare such stock, and all previous payments thereon, forfeited for the use of the corporation, but shall not declare such forfeiture until they have caused a written notice to be served on such stockholder, personally or by mail, or, if dead, to his legal representatives, stating that, in accordance with a resolution of the board, he is required to make such payment at a time and place, and in the manner to be specified in such notice, and that if he fails to make the same in the manner specified, his stock, and all previous payments thereon, will be forfeited for the use of such corporation, and thereafter such corporation, should default in payment be made, may sell the same and issue new certificates of stock therefor, provided the notice is served or deposited in the mail at least sixty days previous to the day on which such payment is required to be made.

We are inclined to think, in view of this legislation, the charter directors could do such acts only as were necessary to set the association in motion as a corporation, not to make contracts or incur liabilities for the construction of the road in which no one of them may have had a pecuniary interest as a stockholder. These were to be left to the judgment and decision of the directors elected by the stockholders. Without expressing any definite opinion on this point, we are informed by the record that, by the articles of association filed and recorded, the capital stock of this corporation was fixed at one million of dollars, and the shares of capital stock to be ten thousand, of one hundred dollars each, and when this call was made on appellant, August 1, 1874, the sum of

one hundred and fifty one thousand two hundred dollars had been subscribed.

The question is, and it is the important question in the case, was it in the power of these directors to make this call, the full amount of the capital stock not having been subscribed? This question is to be decided by authority. On reference to a leading work on railways, 1 Redfield on the Law of Railways, 176, we find it is there said, that it is an essential condition to making calls in these companies, where the number of shares and the amount of capital is fixed, that the whole stock shall be subscribed before any call can lawfully be made. Reference is made in support of the text to *Stoneham Branch R. R. Co.* v. *Gould*, 2 Gray, 277, in which Ch. J. SHAW uses this emphatic language: It is a rule of law too well settled to be now questioned, that when the capital stock and the number of shares are fixed by the act of incorporation (in this case by the articles filed and recorded), or by any vote or by-law passed conformably to the act of incorporation, no assessment can be lawfully made on the share of any subscriber until the whole number of shares has been taken. This was held in *Salem Mill-dam* v. *Roper*, 6 Pick. 23, and 9 Pick. 187; *Cabut and West Springfield Bridge* v. *Chapin*, 6 Cush. 50; *Worcester and Nashua R. R. Co.* v. *Hinds*, 9 Cush. 110.

The chief justice says this is no arbitrary rule—it is founded on a plain dictate of justice and the strict principles regulating the obligation of contracts. When a man subscribes a share to a stock to consist of one thousand shares, in order to carry on some designated enterprise, he binds himself to pay a thousandth part of the cost of such enterprise. If only five hundred are subscribed for, and he can have no assurance, which he is bound to accept, that the remainder will be taken, he should be held, if liable to assessment, to pay a five hundredth part of the cost of the enterprise, besides incurring the risk of an entire failure of the enterprise itself, and the loss of the amount advanced toward it. The same doctrine is held

in *Somerset and Kennebec R. R. Co.* v. *Cushing,* 45 Me. 124. Other cases might be cited, but it is unnecessary.

By the articles of incorporation filed and recorded a corporation was created, as efficient for all the contemplated purposes as if its power had been conferred by a special charter. The capital stock was fixed, definitely, at one million of dollars, to be divided into ten thousand shares, of one hundred dollars each, and that amount must have been subscribed before the corporation could have a legal existence. It was a condition precedent to the legal existence of the company. There is nothing in the "articles" or in the statute which authorizes the corporation to commence operations when a less amount is subscribed.

Very many charters might be cited which declare, when a less amount than the whole capital stock is subscribed the corporation may proceed in their business; but nothing of that sort is found in this case.

There are various other points and objections made by appellant which need not be noticed, as what we have said "cuts the case up by the roots," and there can be no recovery.

The judgment of the circuit court is reversed.

*Judgment reversed.*