MARY J. EATON *vs.* PACIFIC NATIONAL BANK.

Suffolk.   Nov. 15, 1886. — March 23, 1887.   HOLMES & GARDNER, JJ., absent.

If the report of a justice of this court, before whom a case is tried without a jury, states the facts found by him, and reserves the case for the consideration of the full court, this is a sufficient reservation of the questions of law arising thereon, under the Pub. Sts. *c.* 150, § 8.

By the articles of association of a national bank, its capital might be increased according to the provisions of the U. S. Rev. Sts. § 5142, and each stockholder had the privilege of subscribing for the increase in proportion to the number of shares already held by him. The directors also had the power to provide for an increase of capital and to regulate the manner in which it should be made. A by-law of the bank provided, that, when an increase of stock should be determined on, the board of directors should notify the stockholders, and cause a subscription to be opened for the same; and that if any stockholder failed to subscribe for his proportion within a reasonable time, which should be stated in the notice, the directors might determine what disposition should be made of the privilege of subscribing for the new stock. While these articles and this by-law were in force, the directors voted to double the capital stock, and a notice was sent to the stockholders accordingly, which also stated when the subscriptions for the new stock were payable. No subscription books were opened, but A., a stockholder, who held forty shares, paid the bank $4000, and took a receipt which stated that this sum was received " on account of subscription to new stock." The comptroller of the currency did not certify his approval of this increase of the capital stock, and the whole amount of the increase was not paid in. The bank suspended payment, and a bank examiner was placed in charge of the bank by the comptroller of the currency, and he took possession of all the books and assets of the bank. While this state of things continued, the directors met, and passed a vote, which, after reciting the former vote, the amount paid in, and the amount not paid in, declared that the

latter sum be cancelled and deducted from the capital stock, and that the paid up capital stock amounted to a certain sum, which was equal to the former capital and the amount paid in under the former vote. The comptroller of the currency, upon being notified of this vote, issued a certificate that the capital stock was increased by a certain sum, being that paid in. On the same day, the comptroller of the currency notified the bank, that, as the entire capital stock was lost, an assessment of one hundred per cent was required to make good the deficiency. After this, the bank made out a certificate for forty shares in the so called increased capital, and A. was registered in the stock register of the bank as the owner of forty shares. No notice was given to A. of the last vote, or of the existence of the certificate, and he never assented to any change in the proposed increase of the capital stock; but demanded back the money paid by him. Subsequently, the bank was allowed to resume business. *Held*, that A. could maintain an action against the bank to recover the $4000 and interest from the time of the demand.

CONTRACT. Writ dated March 14, 1882, and returnable to the Superior Court. The declaration contained two counts. The first count was for money had and received. The second count, which was alleged to be for the same cause of action, contained the following: " The plaintiff says that on the twenty-eighth day of September, 1881, she paid to the defendant four thousand dollars, which it then agreed to apply in payment for forty shares, of the par value of one hundred dollars each, of capital stock in the Pacific National Bank in an increase of said capital stock in the amount of five hundred thousand dollars, which increase of five hundred thousand dollars it then agreed to make, and to issue to her, within a reasonable time after the said twenty-eighth day of September, forty shares of said increase of capital of the par value of one hundred dollars each. And the plaintiff says that the defendant did not so apply said four thousand dollars for the use and benefit of the plaintiff, as it was bound to do, and it did not, within a reasonable time thereafter, issue and give to her, nor has it at any time issued or given to her, forty shares of said stock, of the par value of one hundred dollars each, in an increase of five hundred thousand dollars of said capital stock, as it agreed to do, but has wholly failed so to do, and it owes her said four thousand dollars, with interest thereon since the same was paid to it as aforesaid." The answer, in addition to a general denial as to each count, alleged that the defendant " is, and ever since the year 1877 has been, a national banking association duly organized and established under the law of the United States; that on

September 13, 1881, the directors of the defendant association, being thereto duly authorized, voted to increase the capital stock of said association from five hundred thousand to one million dollars; that thereupon the plaintiff, being the holder of forty shares of the capital stock of said association, became entitled to take forty shares of the new stock upon paying four thousand dollars therefor to the association on or before October 1 then next ensuing; that on or about September 28, 1881, the plaintiff paid the defendant four thousand dollars for said forty shares of new stock, and subsequently, before this action was begun, the same were placed in her name, and a certificate was issued to her therefor."

The case was removed by the defendant to this court, under the Pub. Sts. *c.* 152, § 8, where it was tried, without a jury, before *W. Allen,* J., who reported it, in substance as follows:

The defendant is a national banking association, organized under the laws of the United States, by articles of association, of which the fifth article is as follows: " The capital stock of this association shall be two hundred and fifty thousand dollars, to be divided into shares of one hundred dollars each; but the capital may be increased according to the provisions of § 5142 of the Revised Statutes to any sum not exceeding ten hundred thousand dollars; and, in the case of the increase of capital of the association, each stockholder shall have the privilege of subscribing for such number of shares of the proposed increase of the capital stock as he may be entitled to according to the number of shares owned by him before the stock is increased."   By article 6, power is given the directors " to provide for an increase of the capital of the association, and to regulate the manner in which such increase shall be made."

The association also adopted by-laws, of which § 11 is as follows: " Whenever an increase of stock shall be determined upon, it shall be the duty of the board to notify all the stockholders of the same, and cause a subscription to be opened for such increase; and each stockholder shall have the privilege of subscribing for such number of shares of new stock as he may be entitled to subscribe for, in proportion to his existing stock in the bank.   If any stockholder shall fail to subscribe for the amount of stock to which he may be entitled, within a

reasonable time, which shall be stated in the notice, the directors may determine what disposition shall be made of the privilege of subscribing for the new stock."

On September 13, 1881, the capital stock of the defendant was $500,000, of which the plaintiff owned forty shares, which stood in her name on the books of the defendant, and for which she held a certificate. On that day the directors of the defendant voted " that the capital of this bank be increased to one million dollars, and that the stockholders of this date have the right to take the new stock at par to an equal amount to that now held by them." And a notice of such increase, signed by the cashier of the defendant, and dated September 13, 1881, was sent to and received by the plaintiff, as follows : " At a meeting of the directors of this bank held this day, it was voted, that the capital of this bank be increased to one million dollars, and that the stockholders of this date have the right to take the new stock at par in equal amounts to that now held by them. Subscription to the new stock payable October 1st. Parties desiring to anticipate payment will be allowed interest to that date at four per cent per annum."

No subscription books were opened, and the plaintiff did not subscribe for any stock in said increase of capital, but on September 28, 1881, she paid to the defendant $4000, and received a receipt, signed by the said cashier, as follows : " Received of Mary J. Eaton four thousand dollars, on account of subscription to new stock."

The whole amount of increase of capital to $1,000,000, being $500,000, was never paid in, and no notice was ever transmitted to the comptroller of the currency that said additional $500,000 had been paid in, or that the whole amount of such proposed increase of the capital to $1,000,000 had been paid in, and the comptroller never issued a certificate stating that the said capital stock had been increased to the amount of $1,000,000, voted as above set forth. Nor did he ever certify his approval of such increase, or that it had been duly paid in as a part of the capital of said defendant, and no action was taken by him respecting any increase of stock from that of $500,000, except as hereinafter stated. Only $461,300 of said proposed increase of $500,000 was ever taken or paid in, all of which was paid in

prior to November 18, 1881, and was used in the general business of the bank with its other funds. On November 18, 1881, the defendant became unable to meet its debts and liabilities, suspended payment thereof, failed to redeem its circulating notes, and thereupon closed its doors to business.

Daniel Needham, a duly appointed examiner of national banks, having made an examination of said bank, and having reported its condition to the comptroller of the currency, was, on November 18, 1881, placed in charge and possession of said bank, and of all its funds, assets, records, and books, by said comptroller. The bank remained under the exclusive charge and in the possession of Needham, with its doors closed to business, until on or about March 18, 1882, the directors thereof having in the mean time no possession or control over the assets of said bank, or of the moneys received or paid out on account of the bank, except under the supervision, control, and authority of said examiner.

On December 13, 1881, the directors of the defendant passed the following votes:

"Voted, that whereas it was voted by this board, on the thirteenth day of September last, that the capital of this bank be increased to one million dollars, and that the stockholders of this date have the right to take the new stock at par in equal amount to that held by them; and whereas the stockholders were duly notified of said vote, and also that subscriptions to the new stock should be payable October 1st; and whereas $461,300 of said new stock has been taken and paid in; and whereas $38,700 thereof has not been taken and paid in, voted, that said $38,700 of said stock be and is hereby cancelled and deducted from said capital stock of $1,000,000, and that the paid up capital stock of this association amounts to $961,300.

"Voted, that the comptroller of the currency be notified that the capital of this association has been increased in the sum of $461,300, and that the whole amount of said increase has been paid in as part of the capital of this association, and that he be requested to issue his certificate of said increase to this association according to law."

On the same day, the cashier of the defendant, by direction of the directors, and upon suggestion of the comptroller that such a

certificate should be sent to him, sent the following certificate, signed and duly sworn to by the cashier, to the comptroller of the currency, together with a copy of the foregoing votes: " It is hereby certified that the capital stock of the Pacific National Bank of Boston has been increased, pursuant to the articles of association of said bank, in the sum of four hundred and sixty-one thousand three hundred dollars, all of which has been paid in, and that the paid up capital stock of said bank now amounts to nine hundred sixty-one thousand three hundred dollars."

On receipt of said certificate and copy, the comptroller of the currency sent to the directors of the defendant the following certificate signed by him, under seal, and dated December 16, 1881 : " Whereas satisfactory notice has been transmitted to the comptroller of the currency that the capital stock of the Pacific National Bank of Boston, Mass., has been increased to the sum of four hundred and sixty-one thousand three hundred dollars, in accordance with its articles of association, and that the whole amount of such increase has been paid in : now it is hereby certified that the capital stock of the Pacific National Bank of Boston. Mass., aforesaid, has been increased as aforesaid in the sum of four hundred and sixty-one thousand three hundred dollars ; that said increase of capital has been paid in to said bank as a part of the capital thereof; and that the said increase of capital stock is approved by the comptroller of the currency."

There was no vote of the stockholders of the defendant relating to the increase or reduction of its capital stock.

On December 16, 1881, the comptroller also sent to the defendant the following communication, signed by him, and under seal: " The entire capital stock of the Pacific National Bank of Boston, Massachusetts, amounting to nine hundred and sixty-one thousand three hundred dollars ($961,300) having been lost, notice is hereby given to said bank, under the provisions of section 5205 of the Revised Statutes of the United States, to pay the deficiency in its capital stock by an assessment of one hundred per cent upon its shareholders *pro rata* for the amount of capital stock held by each, and that if such deficiency shall not be paid, and said bank shall refuse to go into liquidation as provided by law, for three months after this notice shall have been

received by it, a receiver may be appointed to close up the business of the association according to the provisions of section 5234 of the Revised Statutes of the United States."

No certificate of stock in said proposed increase of capital in the amount of $500,000 was made by the bank, nor was any certificate in said claimed increase of $461,300 received by or offered to the plaintiff; but when the certificate from the comptroller, made December 16, was received by the bank, a certificate of forty shares in said claimed increase of $461,300 was made by the bank, which was never called for, taken by, or tendered to the plaintiff, but still remains in the certificate book, and she was then registered in the stock register of the bank as the owner thereof, without her knowledge. No certificates in said claimed increase were ever tendered by the bank to the persons to whom they were made, but certificates were delivered to them when called for. No communication was made to the plaintiff with reference to said vote of the directors of December 13, or to the change in said proposed increase, or to said certificate of the comptroller, or to said certificate made to her; and she never assented to any change in the proposed increase in the sum of $500,000.

On January 10, 1882, before the opening of the annual meeting hereinafter referred to, she made the following demand upon the defendant in writing, delivered to its directors:

" Boston, January 10, 1882.   To the Pacific National Bank: The conditions upon which you received four thousand dollars of me on the twenty-eighth day of September, 1881, not having been performed, I hereby demand payment of said four thousand dollars.                         Mary J. Eaton."

On December 10, 1881, the directors voted to call the annual meeting of the stockholders, to be held on January 10, 1882, and thereupon a notice thereof was sent to and received by the plaintiff. This notice was also printed in the newspapers then published in Boston.

At this meeting the said examiner made a report of the condition of the bank, and among other things the following votes were passed:

" Voted, In accordance with the notice of the comptroller of the currency, dated December 16, 1881, there be and hereby

is laid an assessment of one hundred per cent upon the share-holders of the Pacific National Bank of Boston, Mass., *pro rata* for the amount of capital stock of said bank held by each share-holder.

" Voted, That the board of directors notify each shareholder of said assessment and collect the same forthwith."

The whole number of votes cast was 5549, representing 5549 shares of stock, of which 5494 were in the affirmative and 55 in the negative.

The plaintiff attended said meeting by her authorized attorney under the following proxy, signed by her, which was not filed with the bank, and on which no vote was cast:

" Know all men by these presents that I, the undersigned, stockholder in the Pacific National Bank, do hereby appoint J. H. Benton, Jr., true and lawful attorney, with power of sub-stitution for myself and in my name, to vote at the meeting of the stockholders in said company upon my forty shares of said stock, to be held at Boston, January 10, or at any adjournment thereof, with all the power I should possess if personally present, hereby revoking all previous proxies. And this proxy does not apply to anything but my forty shares of the original stock of said bank."

Notice of said assessment and vote was forthwith given to the plaintiff by said bank, but she never paid any part thereof.

The total amount paid in to said directors by the stock-holders, on the assessment agreed upon at said meeting of Jan-uary 10, 1882, was $742,800, and it was all paid in prior to May 20, 1882.

On March 18, 1882, by permission of the comptroller of the currency, the directors took possession of the assets of said bank, opened its doors to business, and continued to do a general bank-ing business, lending money, receiving and paying deposits, and paying debts and expenses, until May 20, 1882, but made no losses on new loans during that period. The bank was closed to business on May 20, 1882, and the directors voted to go into liqui-dation; and thereupon Linus M. Price was appointed receiver thereof by the comptroller of the currency, and continued in charge of said bank, and of its assets, books, papers, and records, until March 18, 1886, when Peter Butler was appointed by said

comptroller receiver thereof in place of said Price, and said Butler has ever since been in charge of said bank, and of its assets, books, papers, and records.

The only authority of the bank to increase or reduce its capital was under its articles of association and the by-law hereinbefore set forth, and §§ 5142 and 5143 of the Revised Statutes of the United States, which are as follows :

" Any association formed under this title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient, subject to the limitations of this title. But the maximum of such increase to be provided in the articles of association shall be determined by the comptroller of the currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the comptroller of the currency, and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association.

" Any association formed under this title may, by the vote of shareholders owning two thirds of its capital stock, reduce its capital to any sum not below the amount required by this title to authorize the formation of associations ; but no such reduction shall be allowable which will reduce the capital of the association below the amount required for its outstanding circulation, nor shall any such reduction be made until the amount of the proposed reduction has been reported to the comptroller of the currency and his approval thereof obtained."

The report concluded as follows : " Upon the trial before me, I found the foregoing facts, subject to any objection by either party as to their materiality or competency ; and, at the request of the parties, reserve the case for the consideration of the full court."

*J. H. Benton, Jr.*, for the plaintiff.

*A. A. Ranney*, for the defendant.

FIELD, J. When this action was brought, the bank was not in the hands of a receiver, and the receiver afterwards appointed has not formally intervened or appeared; but it was understood at the argument that the action was defended by him, and that he desired that it should be prosecuted for the purpose

of determining the liability of the bank. See *Bethel Bank* v. *Pahquioque Bank*, 14 Wall. 383.

The case was reserved for the consideration of the full court, presumably under the Pub. Sts. *c.* 150, § 8. The facts have been found, and although the questions of law have not been stated in the report it is plainly the intention of the report to reserve the question of law whether, on the facts found, or such of them as are competent, judgment should be entered for the plaintiff or for the defendant. We are of opinion that the reservation is within the power conferred by this section of the statutes; and we consider the case as if it were reserved for judgment upon the facts found, which are in the nature of a special verdict. See *Terry* v. *Brightman*, 129 Mass. 535.

By the articles of association of the bank " the capital may be increased according to the provisions of § 5142 of the Revised Statutes to any sum not exceeding ten hundred thousand dollars," and the board of directors shall have power " to provide for an increase of the capital of the association, and to regulate the manner in which such increase shall be made." The vote of the directors of September 13, 1881, to increase the capital stock to $1,000,000, which was an increase of $500,000, and the subsequent vote of December 13, 1881, to increase the capital stock by $461,300, instead of $500,000, were therefore both within the power of the board.

The case raises a question which was suggested, but not decided, in *Delano* v. *Butler*, 118 U. S. 634. It was there said: " It will be observed that, without waiting to see what the future action of the association and the comptroller of the currency might be on the question of the ultimate amount of the increased stock, the plaintiff in error paid for his shares and accepted his certificate. This he did, in legal contemplation, with knowledge of the law which authorized the association and the comptroller of the currency to reduce the amount of the proposed increase to a less sum than that fixed in the original proposal of the directors; and such payment and acceptance of the certificates in accordance therewith might amount, under such circumstances, on his part, to a waiver of the right to insist that he should not be bound unless the whole amount of the proposed increase should be subscribed for and paid in. But without insisting

upon that point, or deciding it, we think that the subsequent conduct of the plaintiff in error amounts to a ratification." 118 U. S. 650.

In the present case the plaintiff paid in her money, but did not accept a certificate of stock.

To make the increase of the capital stock valid, it must be authorized in accordance with the articles of the association; the whole amount of it must be paid in; notice thereof must be transmitted to the comptroller, and he must certify "that it has been duly paid in as part of the capital of such association," and must approve of it. U. S. Rev. Sts. § 5142. The plaintiff therefore was compelled to pay in her money before the final action of the comptroller, in order to become entitled to any part of the new stock. Within the maximum of the increase of capital stock provided for by the articles of association, the comptroller could not determine the amount of the increase except by approving, or refusing to approve, the amount authorized by and paid into the bank. The united action of the bank or its directors, of the subscribers to the new stock, and of the comptroller, was required to effect an increase of the capital stock; and when the plaintiff paid in her money she ran the risk that the contemplated increase of $500,000 might fail, either because it might not all be subscribed for and paid, or because the comptroller might refuse his approval; but she did not run the risk that, if it were all paid in, the comptroller might, without any further action of the bank or its directors, reduce the amount of the increase, because he had not the lawful power to do this. If the comptroller refused his approval, the plan failed. The directors by a new vote might authorize another and a different increase of the capital stock, which, if the amount was paid in, and the comptroller approved of it, would become an actual increase of capital stock. But this would be an abandonment of the first plan by the bank, and the adoption of another.

Upon the ordinary principles of contract, if the plaintiff paid in her money for forty shares of stock, on the condition that five thousand shares of stock should be created, she could not be bound to take the forty shares, if the condition was not performed. If there was such a condition, the plaintiff could not be required to take forty shares out of four thousand six hundred

and thirteen shares, which the bank by a subsequent vote authorized, unless there is something in the facts which shows that the amount of stock to be created was immaterial, or unless she assented to the change, or her assent is to be implied, or unless, on grounds of public policy and the rights of creditors, she cannot be permitted to withdraw her money after the comptroller has certified that a certain amount has been paid in as an increase of the capital stock, which amount includes the sum she had paid.

Whether the plaintiff shall become the owner of forty out of five thousand shares of capital stock, or the owner of forty out of four thousand one hundred and sixty-three shares cannot be regarded as immaterial, particularly in a corporation where the stockholders are liable to an assessment to the amount of the stock held by each to supply a deficiency in the capital stock, (U. S. Rev. Sts. § 5205,) and are also held " individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." U. S. Rev. Sts. § 5151.

Neither can we perceive any sound reason why, in legal contemplation, she must be held to have assented to the change whereby the amount of the contemplated increase was reduced to $461,300. She paid in her money under a vote whereby the capital stock was to be increased by $500,000. If this amount was not paid in, or the comptroller did not approve of this increase, there was an end of the proposition which had been voted, and which she and the bank had in contemplation when she paid in her money. If the directors of the bank, after she paid in her money, abandoned their original vote, and passed another vote for an increase different in amount, it is difficult to see how she was bound by it. They were not her agents; the new vote was not passed in furtherance of the original proposition to make the increase $500,000 ; the vote was not a reduction of the capital stock of the bank, because the increase had not then been made ; and the capital stock of a banking association can only be reduced by a vote of the shareholders. U. S. Rev. Sts. § 5143. To make the increase of the capital stock

$461,300, instead of $500,000, was essentially a new proposition, authorized for the first time on December 13, 1881, nearly two months and a half after the plaintiff paid in her money.

On the facts found, the intention of the directors and of the comptroller is apparent. The bank failed on November 18, 1881; and, before this, $461,300 had been paid into the bank for new stock, to be created under the vote passed on September 13, 1881. It was not likely that any more money would be paid in for this purpose after the failure of the bank. The bank had received this money, and had used and lost it. On its failure, a bank examiner took possession of the bank and its assets, and remained in possession until March 18, 1882. While its assets were in the possession of the bank examiner, it was decided to make this $461,300 a part of the capital stock of the bank; it would then cease to be a debt of the bank, and the creditors of this sum, having thus been made stockholders, would then be liable to an assessment to an equal amount to supply the deficiency of capital stock, and would also be liable to pay another equal amount to satisfy the debts of the bank. The directors accordingly passed the vote of December 13, 1881, which in form is a reduction of the capital stock by the sum of $38,700, but in fact is a vote authorizing the increase of the capital stock by $461,300; and they attempted to apply the money paid in under the previous vote to this new increase which they had voted, and then voted that the comptroller of the currency be notified that the capital had been increased by this sum, and that the whole amount had been paid in; and they requested the comptroller to issue his certificate. The cashier on the same day sent to the comptroller a copy of the foregoing votes, and his certificate that the capital had been increased by the sum of $461,300, all of which had been paid in. The copy of the votes sent to the comptroller informed him that the attempt to obtain $500,000 for an increase of the capital stock had failed, and because it had failed that the directors had fixed the amount of the increase at $461,300, and had declared the money paid in under the previous vote as paid in for the new stock voted on December 13. The comptroller of the currency on December 16, 1881, issued the usual certificate approving of "said increase of capital stock" to the amount of $461,300, and on the same

day sent to the bank a notice that its entire capital stock, including the increase he had just then approved, having been lost, an assessment of one hundred per cent must be laid upon the shareholders, otherwise the bank must go into liquidation, or a receiver must be appointed according to U. S. Rev. Sts. § 5234.

It is argued that the certificate of the comptroller is conclusive on the plaintiff that the sum of $461,300 was actually paid in as an increase of capital stock, and that this includes the amount which she paid.  Undoubtedly the public, in dealing with a bank, do rely to some extent upon the certificate by the comptroller of the amount of the increase in the capital stock of the bank, and that this amount has been actually paid in ; and so long as the certificate remains unrevoked, it may be taken to establish the amount of the capital stock of the bank.  If the certificate happens for any reason to be false, it is probable that an assessment may be laid upon the shareholders to make up the deficiency in the capital stock.  But that the certificate of the comptroller makes any one a shareholder who is not one, or enables a bank to appropriate a debt it owes to a payment for stock, or to treat one of its creditors as a shareholder, is a proposition to which we cannot assent.  The obligation of the plaintiff to take the new shares depends upon her contract with the bank.  If we assume that immediately after the vote of December 13, 1881, the plaintiff could have treated the original vote as abandoned, and could have demanded her money, and brought and maintained an action to recover it, the action of the directors and of the comptroller in erroneously including the amount she had paid in the amount which had been paid in to increase the capital stock by $461,300 cannot affect her legal relations with the bank, unless she has assented to or ratified that action, or is estopped by her conduct, or has been guilty of laches.  As she demanded repayment, on January 10, 1882, of the money she had paid, she is not guilty of laches.  It is not contended that there is any estoppel; and it is plain that there is no evidence of actual assent or ratification.

The defendant denies that it was the contract between it and the plaintiff that she should receive forty shares out of five thousand shares of new stock, and says that the contract was that she should receive forty shares of new stock, and that

there was no condition attached to the contract that the capital stock should be increased by $500,000.  This objection is fundamental.  The plaintiff did not subscribe for stock, but paid in her money in pursuance of the vote of September 13, 1881, and she took a receipt.  There is no express condition; but, construing the receipt in connection with the vote, it is plain that she paid in her money for forty shares of the new stock voted on September 13.

In *Warwick Railroad* v. *Cady*, 11 R. I. 131, 137, it is said: " If the charter had provided for a definite capital, or if by general law provision had been made that the enterprise should not be commenced until some definite proportion or amount should be subscribed, . . . . or if before subscription the capital had been fixed by vote or agreement, then it might well be held that the raising the whole amount was a condition of the subscription.  And so, also, if the amount was named in the paper subscribed."  This statement of the law is supported by our own decisions and by many others.  *Salem Mill-Dam Corporation* v. *Ropes*, 6 Pick. 23 ; and 9 Pick. 187.  *Central Turnpike* v. *Valentine*, 10 Pick. 142.  *Cabot & West Springfield Bridge* v. *Chapin*, 6 Cush. 50.  *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423.  *People's Ferry Co.* v. *Balch*, 8 Gray, 303. *Troy & Greenfield Railroad* v. *Newton*, 8 Gray, 596.  *Katama Land Co.* v. *Jernegan*, 126 Mass. 155.  *Read* v. *Memphis Gas Co.* 9 Heisk. 545.  *Santa Cruz Railroad* v. *Schwartz*, 53 Cal. 106.  *Hughes* v. *Antietam Manuf. Co.* 34 Md. 316.  *Ridgefield & New York Railroad* v. *Brush*, 43 Conn. 86.  *Ticonic Water Power Co.* v. *Lang*, 63 Maine, 480.  *Lewey's Island Railroad* v. *Bolton*, 48 Maine, 451.  *Allman* v. *Havana, Rantoul, & Eastern Railroad*, 88 Ill. 521.  *Memphis Branch Railroad* v. *Sullivan*, 57 Ga. 240.  *Peoria & Rock Island Railroad* v. *Preston*, 35 Iowa, 115.  *Contoocook Valley Railroad* v. *Barker*, 32 N. H. 363.  *Norwich & Lowestoft Nav. Co.* v. *Theobald*, M. & M. 151. *Pitchford* v. *Davis*, 5 M. & W. 2.  *Peirce* v. *Jersey Waterworks Co.* L. R. 5 Ex. 209.

If, however, the amount of the capital stock is left indefinite, or the maximum and minimum of the amount only are defined, with the right in the corporators or directors subsequently to determine the amount, a subscription to stock must be deemed

absolute, unless there is an express condition inserted in the subscription, or unless a sufficient amount is not subscribed to enable the corporation legally to organize. *Penobscot & Kennebec Railroad* v. *Bartlett*, 12 Gray, 244. *Boston, Barre, & Gardner Railroad* v. *Wellington*, 113 Mass. 79. *Boston & Albany Railroad* v. *Pearson*, 128 Mass. 445.

A subscription to an increase of capital stock manifestly differs from a subscription to the original stock in this, that the subscriber is dealing with a corporation already organized and doing business, and it has been said that there is no implied condition that the whole number of the new shares created should be subscribed for or issued. But whether there is an implied condition attached to a subscription for new stock depends upon the contract of subscription, construed with reference to the law and the facts under which it is made, and this is to be determined in the same manner, and upon the same principles, in subscriptions for new stock as in subscriptions for original stock. See *Charleston* v. *People's National Bank*, 5 S. Car. 103. In the common case of a corporation authorized to create new stock by a vote of its stockholders or directors, the stock is created by the vote. In the absence of any statute prescribing how it shall be disposed of, it may be allotted among the stockholders, or it may be sold from time to time as the corporation needs money. It may be sold by subscription, and the stockholders may be entitled to a preference in subscribing, and they may sell their rights. If the law requires that the new stock be paid for at par before it is issued, this must of course be done; but unless a statute or a by-law requires that the new stock shall all be subscribed for before it is created or issued, there is no implied condition that all the stock created shall be subscribed for or issued. The increase of the capital stock is fixed by the vote, and the corporation is left to dispose of the new stock as it can, according to law. *Nutter* v. *Lexington & West Cambridge Railroad*, 6 Gray, 85.

But, in the case at bar, the provisions of the statutes of the United States relating to an increase of the capital stock are even more strict than those relating to the original stock. An association may be authorized to commence business when fifty per cent of the capital stock has been paid in; U. S. Rev. Sts.

§ 5140; but there can be no increase in the capital stock until the whole amount of the increase has been paid in. § 5142. The vote of the directors of September 13, 1881, was, we think, in the nature of a proposal to the stockholders to subscribe for five thousand shares of new stock, and to pay in for it $500,000. It was necessary that the stock should all be taken and the money all paid in before the new stock could be created. It was a condition precedent to the issue of the new stock under · this vote, that both these things should be done, and that the comptroller should certify that they had been done, and approve of the increase. We think that the plaintiff paid in her money upon the implied condition that she should not be entitled to new stock unless $500,000 was paid in and the comptroller approved of the increase, and also upon the implied condition that she should not be required to take new stock unless the amount proposed was created.

The result is, that the plaintiff is entitled to judgment for $4000, with interest from January 10, 1882, the date of her demand. *So ordered.*