ANVIL MINING COMPANY, Respondent, vs. SHERMAN, Appellant.

*March 18 — April 25, 1889.*

*Corporations: Assessments: Condition precedent.*

1. No call or assessment, subsequent to the preliminary one, upon the subscription to the capital stock of a corporation can be made unless, in compliance with sec. 1773, R. S., at least one half of the stock has been subscribed, and at least twenty per cent. thereof actually paid in. And this is so, even though the subscriber agreed " to pay the balance on each share at such times and in such instalments as the same shall be called for by said corporation."

2. In an action to recover a call or assessment the complaint must aver compliance with said sec. 1773, R. S.

APPEAL from the Superior Court of *Milwaukee* County. The case is stated in the opinion.

For the appellant there was a brief by *Quarles, Spence & Dyer*, and oral argument by *Charles Quarles*. In addition to cases referred to in the opinion, they cited *Hughes v. An-*

Anvil Mining Co. vs. Sherman.

*tietam Mfg. Co.* 34 Md. 318–332; *Garling v. Baechtel,* 41 id. 305; *Hale v. Sanborn,* 16 Neb. 1; *Shurtz v. S. & T. R. R. Co.* 9 Mich. 269; *Galveston Hotel Co. v. Bolton,* 46 Tex. 633.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, and oral argument by *J. G. Flanders.* By his contract of subscription the defendant promised *payment* for his shares *without any condition,* and thereby waived the condition precedent which would otherwise have been implied. *Skowhegan & A. R. Co. v. Kinsman,* 77 Me. 370; *Lail v. Mt. S. C. R. Co.* 13 Bush, 32, 35. By paying to the corporation without objection $1,250 of the call or assessment, leaving but $325 due thereon, the defendant estopped himself from denying liability for such balance. *Intermountain Pub. Co. v. Jack,* 5 Mont. 568, 576; *Boston, B. & G. R. Co. v. Wellington,* 113 Mass. 79, 85, 86; *Musgrave v. Morrison,* 54 Md. 165; *Silpher v. Earhart,* 83 Ind. 173.

ORTON, J. The complaint alleges that the plaintiff is a corporation, and has been such since the 10th day of January, 1888, and that the defendant, and other persons whose names are here omitted, for a valuable consideration made, subscribed, executed, and delivered to the plaintiff the following agreement, to wit:

"*Subscription for Stock in the Anvil Mining Company.* Whereas, the *Anvil Mining Company* is a corporation under the laws of Wisconsin, with a capital stock to be issued of 40,000 shares, each share having a par value of $5; and whereas, it has been determined by the incorporators thereof to open a subscription book for such stock: now, therefore, each of the undersigned subscribes for the number of shares set opposite his name in said corporation, and agrees to pay therefor $2 in cash on each share, on or before January 25, 1888, and the balance, $3, on each share at such times and in such instalments as the same shall be called for by said

corporation; and agrees, further, that after $5 have been paid in by him on each of such shares of stock said corporation may levy such assessments from time to time upon such shares of stock as it shall deem necessary for the promotion of its objects; and that in case such assessments shall not be paid such stock may be sold by said corporation for such assessments,— it being expressly understood and agreed that no one of the subscribers hereto shall be personally liable beyond the $5 on each share. Name, J. G. SHERMAN. Number of shares, 1575."

It is further averred in the complaint that the defendant subscribed as above, and that the company has been ready and willing to issue the stock to the defendant on his paying the said $2 on each share; and it has demanded the same, and the defendant has only paid the $2 on 1,250 of said shares, and there is due from him $2 each on the balance of 325 shares, amounting to $650, and interest from January 25, 1888. This is the first cause of action.

As a second cause of action, it is alleged, after the above preliminary averments, that at a regular meeting of the board of directors of the plaintiff company, on the 22d day of May, 1888, a call or an assessment of $1 per share upon each share so subscribed was duly made and levied, the same to be paid to the treasurer of the company within ten days, and said defendant was duly notified thereof, and payment thereof was demanded of him, and that he has neglected and refused to comply with such demand, and that there is due on said call or assessment $325, with interest from June 2, 1888.

Judgment is demanded for the whole sum of $975, and interest. The defendant demurred to the second cause of action on the ground that it did not state facts sufficient to entitle the plaintiff to recover. The demurrer was overruled, and the defendant has appealed to this court from said order.

Anvil Mining Co. vs. Sherman.

As I understand the argument of the learned counsel of the appellant, it is that the plaintiff ought to have averred, as a condition precedent to its recovery, that all of the 40,000 shares of its capital stock had been taken or subscribed, or that one half of its capital stock had been duly subscribed, and at least twenty per cent. thereof had been actually paid in, before it made said call or assessment. On the other hand, the learned counsel of the respondent contends that the contract of subscription is absolute and unconditional, and that the defendant is liable to pay said one dollar per share on each one so subscribed on said call.

The first position of the learned counsel of the appellant, that in such a case, before the corporation can make an assessment after the first one for preliminary objects has been made, the whole of its capital stock must have been taken or subscribed, is unquestionably sustained by nearly all of the authorities in this country. The main reason seems to be that, after its preliminary objects have been accomplished, the corporation does not need or require any further pecuniary means until it is capable of transacting its general business, and that it is not capable or authorized to transact any general business, and is not sufficiently organized to do so, until all of its capital stock has been subscribed. This reason would seem to be embodied in the subscription in this case, in respect to assessments to be made on each share of the stock after it has been fully paid. The " corporation may levy such assessments from time to time upon such shares of stock as it shall deem *necessary for the promotion of its objects.*" Another reason seems to be that a subscriber for a certain number of shares ought not to be compelled to pay more than his share of the debts of the corporation incurred in some business enterprise, rated proportionably to the whole number of shares. His share would be less if the whole number of the 40,000 shares had been taken or subscribed than

if less than that number had been subscribed. Those who have become the stockholders must pay the whole debt to the extent of their stock at least, and hence the number of shareholders is vastly important. There is a principle recognized in these decisions that, outside of the language of the subscription itself, the provisions of the charter or of the statute are to be considered in construing and giving effect to the contract of subscription. From the whole, taken together, this condition of full subscription, and the limitations upon the liability of stockholders, are derived. It is by no means an end of the question that the subscription in itself is absolute and unconditional, and yet some cases cited by the learned counsel of the respondent are rested entirely upon the language of the contract of subscription, and, because no condition is found therein, they hold that there is none. The distinction in all of the cases is that the first call or assessment, which is supposed to be paid at once or within a very short time, is unconditional, and *must* be paid, in order to meet the preliminary and incidental expenses of organizing the corporation and getting it into a condition to transact its general business and carry out its general objects.

The leading authority upon this question, and which has been followed by nearly all of the subsequent cases in this country, is the case of *Salem Mill Dam Corp. v. Ropes*, 6 Pick. 23. It is said in the brief of the defendant's counsel in that case that, " if the assessment had been laid for the purpose of defraying *incidental preliminary* expenses, the defendant would not have obliged the corporation to resort to this action." And so here the defendant does not contest the payment of the first assessment which was made for such preliminary objects. In the very able opinion of the eminent Chief Justice PARKER in that case it is said 'that, " having this power in regard to these preliminary arrangements, and being a corporation, we think the power

to assess for the purpose of defraying the consequent expense necessarily follows." But, on the other hand, when an assessment is made afterwards to meet contracts and the general expenses of the undertaking, the corporation must show that it is sufficiently organized and qualified to enter upon such general business by the subscription of its whole capital stock. This view and distinction are important, beyond the necessity to aver the performance of this condition, as bearing upon the argument of the respondent's counsel that the defendant had waived this condition by having paid a large portion of the first assessment. That assessment, as we have seen in the above case, was made for objects of preliminary necessity, and rests on entirely different ground from this future assessment, so that the doctrine of waiver or estoppel cannot apply to such payment. One of the reasons which supports this rule is stated in the case of *Stoneham B. R. Co. v. Gould*, 2 Gray, 277: "When a man subscribes a share to a stock to consist of one thousand shares, in order to carry on some designated enterprise, he binds himself to pay a thousandth part of the cost of such enterprise." It would appear unjust as well as a violation of the contract of subscription to assess the stock of one subscriber for the expenses of the general business of the corporation before it is authorized to do such business and capable of making a fair and equal assessment upon all of its capital stock, and neither condition is complied with until all of its capital stock has been subscribed. It is to be observed that the contracts of subscription in all of the cases are materially alike.

The cases which have followed the above ruling are too numerous to be cited here. Among them are *Newburyport Bridge v. Story*, 6 Pick. 45; *Cabot & W. S. Bridge v. Chapin*, 6 Cush. 50; *Eaton v. Pacific Nat. Bank*, 144 Mass. 260; *Warwick R. Co. v. Cady*, 11 R. I. 131; *Haskell v. Worthington*, 94 Mo. 560; *Banty v. Buckles*, 68 Ind. 49; *Allman v.*

*H., R. & E. R. Co.* 88 Ill. 521; *Peoria & R. I. R. Co. v. Preston,* 35 Iowa, 115; *Rockland, Mt. D. & S. S. B. Co. v. Sewell,* 78 Me. 167. This doctrine is laid down in the text-books as being sustained by an almost unbroken line of authorities. Cook on Stocks, §§ 104, 176; Thomp. Liab. Stockh. § 120; Green's Brice, Ultra Vires, 153. Reference may be had to the very able brief of the appellant's counsel for further argument and authorities.

On the second branch of the proposition, that when the statute provides that the corporation may enter upon its general business after a less subscription than to its *whole* stock, the condition has been complied with when that amount of its capital stock has been subscribed, and the same main reason seems to prevail. *Jewett v. Valley R. Co.* 34 Ohio St. 601. If the corporation, by the general or special law under which it has been formed, may enter upon its general business before the whole amount of its capital stock has been subscribed, to that extent this condition has been changed. Thomp. Liab. Stockh. § 120, and cases cited. But to that extent the statutory amount of the capital stock must be taken before such future call or assessment can be made. *Schenectady & S. P. R. Co. v. Thatcher,* 11 N. Y. 102; *Boston, B. & G. R. Co. v. Wellington,* 113 Mass. 79; *Hanover J. & S. R. Co. v. Haldeman,* 82 Pa. St. 36; *New Haven & D. R. Co. v. Chapman,* 38 Conn. 65. This seems to be the theory and principle of our own statute, and sec. 1773, R. S., provides for the preliminary organization of the corporation, and then limits its power to enter upon its general business as follows: " No such corporation shall transact business with any others than its members until at least one half of its capital stock has been duly subscribed, and at least twenty per cent. thereof actually paid in; and if any obligation shall be contracted in violation hereof, the corporation offending shall have no right of action thereon." Until this statute is complied

Anvil Mining Co. vs. Sherman. ·

with, the corporation has no use for or right to such an assessment. It is a condition precedent to such a call or such an assessment, maintaining the reason of the general current of authorities in the absence of such a statute. The object of the statute seems to be to prevent fictitious and fraudulent corporations from extorting money from confiding stockholders, and obtaining credit when they have no real basis of capital to do business upon and no resources to meet their liabilities. After they have obtained as much money as could be protected from discovery or inquiry from their first subscribers, less than half of the whole number, they may abandon their corporation, and the fraudulent scheme is ended. We think that it is within the intention of this statute that no call or assessment upon the shares of stock already taken, subsequent to the first one for preliminary purposes, shall be made until one full half of the capital stock has been subscribed and twenty per cent. thereof has been actually paid in.

It follows, therefore, that the complaint as to the second cause of action ought to have alleged that the plaintiff corporation had complied with this statute, as a condition precedent to its right of recovery. We are unable to assent to the doctrine of those cases cited by the respondent's counsel, of similar contracts of subscription, that such contracts are unconditional. The contract must be construed in view of the provisions of its charter or of the general statute by which the corporation is governed. Such provisions become a part of the contract and are embodied in it. The superior court erred in overruling the demurrer.

*By the Court.*— The order of the superior court is reversed, and the cause is remanded with direction to sustain said demurrer, and for further proceedings according to law.