Milwaukee Brick & Cement Co. vs. Schoknecht.

---

MILWAUKEE BRICK & CEMENT COMPANY, Respondent, vs.
SCHOKNECHT, Appellant.

*December 7, 1900 — January 8, 1901.*

*Corporations: Subscriptions to stock: Right of action: Fraudulent representations: Powers of directors.*

1. In an action by a corporation to recover a balance due upon a subscription to its capital stock, the complaint alleged and the answer admitted, in effect, that at the time of such subscription plaintiff was a duly organized corporation, authorized to issue shares of its capital stock and to receive subscriptions therefor. *Held*, that this authorized the court to assume that at least one half of the capital stock had been duly subscribed and at least twenty per cent. thereof actually paid in, as required by sec. 1773, Stats. 1898; and that an action on the subscription agreement could be maintained. *Anvil M. Co. v. Sherman*, 74 Wis. 226, distinguished.

2. No statement as to what a corporation will do or intends to do in the future, made to induce a subscription to its capital stock, constitutes a fraud which will be a defense to an action on the subscription contract.

3. A director has no power, unless specially authorized, to bind the corporation by false and fraudulent representations, or even by an express promise.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Affirmed.*

For the appellant there was a brief by *Nath. Pereles & Sons*, and oral argument by *G. D. Goff*. They contended, *inter alia*, that until the whole number of shares contemplated and specified in the contract of subscription have been taken, no call can be made, and the contract, whatever it may be, is immature. 1 Cook, Corporations, § 176; *Salem M. D. Corp. v. Ropes*, 6 Pick. 23; *Newburyport Bridge v. Story*, 6 Pick. 45; *Stoneham B. R. Co. v. Gould*, 2 Gray, 278; *Cabbot & W. S. Bridge v. Chapin*, 6 Cush. 50; *Warwick R. Co. v. Cady*, 11 R. I. 131, 137; *Banty v. Buckles*, 68 Ind. 49; *Allman v. H., R. & E. R. Co.* 88 Ill. 521; *Peoria & R. I. R. Co. v. Preston*, 35 Iowa, 115; *Hughes v. Antietam*

*Mfg. Co.* 34 Md. 318, 332; *Shurtz v. S. & T. R. R. Co.* 9 Mich. 269; *New York, H. & N. R. Co. v. Hunt,* 39 Conn. 75; *Eaton v. Pacific Nat. Bank,* 144 Mass. 260; *Rockland, Mt. D. & S. S. B. Co. v. Sewell,* 78 Me. 167. This common-law rule has been changed by sec. 1773, Stats. 1898; but compliance with that statute is a condition precedent to the right of the plaintiff to recover. *Anvil M. Co. v. Sherman,* 74 Wis. 226. A subscriber does not waive this defense by paying assessments for several years in ignorance of the fact that the governing statute has not been fully observed. 1 Cook, Corporations, § 181; *Morris v. Dorsey,* 48 Md. 461; *Pitchford v. Davis,* 5 Mees. & W. 2.

For the respondent there was a brief by *McElroy & Eschweiler,* and oral argument by *F. C. Eschweiler.* They argued, among other things, that this case is distinguishable from *Anvil M. Co. v. Sherman,* 74 Wis. 226, in that defendant here agreed to pay to an already organized corporation the sum of $100 November 28, 1892, and $50 per month until he had paid a full $1,000. There is no possible opportunity for calls or assessments; he has waived all these by his agreement. 1 Cook, Corporations, § 106; *Estell v. Knightstown & M. T. P. Co.* 41 Ind. 174; *Breedlove v. M. & F. R. Co.* 12 Ind. 114; *Morrison v. Dorsey,* 48 Md. 461; *Phœnix W. Co. v. Badger,* 67 N. Y. 294. In *Anvil M. Co. v. Sherman* the subscription was made at the time of incorporation; in the case at bar, at a time when the plaintiff was a "going" and existing corporation. In that case the subscriber had only paid the first or preliminary instalment; here defendant paid a number, for a long period of time. There the agreement was expressly conditioned upon calls or special action by the plaintiff; here nothing of that kind. *Shick v. Citizens' E. Co.* 15 Ind. App. 329.

CASSODAY, C. J. This action is brought to recover the balance due on a subscription to the capital stock in the

plaintiff corporation. The complaint alleges, in effect, that November 28, 1892, the plaintiff was a duly organized corporation, organized and existing under the laws of this state, and authorized to issue shares of its capital stock and to receive subscriptions in payment therefor, and to do business in the manufacture of clay and cement products and in buying and selling real estate and doing all other acts and things necessary and proper for the carrying on of the business aforesaid, and has existed as such ever since; that November 28, 1892, the defendant executed and delivered to the plaintiff his certain subscription for four shares, each of the par value of $250, of the capital stock of the plaintiff; that in and by such subscription the defendant further agreed to pay $100 November 28, 1892, and the further sum of $50 per month until the full amount of $1,000 had been paid; that thereafter, and on November 28, 1892, the plaintiff accepted such subscription for four shares of the capital stock of the company, amounting in all to $1,000, and in pursuance of such contract and agreement and subscription the defendant paid on account thereof $150 November 28, 1892, $50 January 31, 1893, and $100 March 21, 1893, but had paid no other or further sum on account thereof; that although $700 became due and payable in such instalments on the 28th day of each and every month subsequent to March 28, 1893, until the balance should be paid, making the last payment thereof due and payable May 28, 1894, there was and is due and unpaid on account of such subscription $700, with interest thereon from the several dates therein stated. Judgment was demanded for that amount with interest, costs, and disbursements.

The defendant, by his answer, admitted that the plaintiff is a corporation duly organized and existing under and by virtue of the laws of this state, as set out in the complaint; that the plaintiff was a corporation, existing as such, November 28, 1892; that it has continued to be, and now is, a

corporation organized and existing, as more specifically set out and alleged in the complaint; that he agreed to pay the sum of $100 November 28, 1892,— but expressly denies that he agreed to pay the further sum of $50 per month until the full amount of $1,000, or any other amount, was fully paid; that he paid to the plaintiff $100 November 28, 1892, $50 January 31, 1893, and $100 March 21, 1893; and, except as so admitted, the defendant denies each and every allegation therein contained. For a separate defense, embodying all the allegations of the preceding defense, the answer alleged, in effect, that on and before November 28, 1892, the plaintiff did represent to the defendant that it was a corporation organized and existing, among other things, for the purpose of manufacturing clay and cement, and expressly represented to the defendant that the plaintiff intended to erect, build, and complete a plant or works suitable for the manufacture of cement, and that, to fully equip and complete such plant, it would be necessary to engage the services of a mason contractor to do certain work in and about the erecting, completing, and equipping such works and certain cement and limekilns connected therewith; that it was expressly understood and agreed by and between the plaintiff and the defendant that the plaintiff would erect, build, and equip such plant as aforesaid if the defendant would subscribe to its capital stock to the amount of four shares thereof; that the plaintiff, in order to induce him to subscribe to its capital stock, submitted to him, before he had subscribed or agreed to subscribe, certain plans and drawings of such proposed cement plant or works, designed and drawn for it by its architectural engineers; that in consequence of such representations, and in reliance thereon, he subscribed for such four shares of capital stock, and paid his subscriptions thereto, in the several amounts and on the several dates stated; that it was understood and agreed, as a part of such subscription agreement, that the payment of

the same was conditioned upon the erection, building, equipping, and operating such plant; that the plaintiff never erected, built, or equipped such cement works, or engaged at any time in the business of manufacturing cement, but has wholly abandoned its plans of erecting and operating such cement works, though frequently requested so to do.

The answer also contains two counterclaims, each based upon the defensive matter so admitted and alleged,— one for $300 damages, based upon a representation and promise made by the plaintiff before the defendant subscribed for such stock to the effect that if he would so subscribe the plaintiff would build, erect, equip, and operate a plant for cement works according to the plans and drawings theretofore made, but which the plaintiff failed to perform; and the other for $1,500 damages, based upon the representations made by the plaintiff before the defendant signed such subscription to the effect that it intended to erect and operate such plant, and that if the defendant would so subscribe the plaintiff would, in consideration thereof, award, let, and give to the defendant the contract for doing the mason work, but which the plaintiff failed to perform.

The plaintiff, replying, denies each and every allegation of the respective counterclaims.

Upon the trial the plaintiff, with leave of the court, amended its complaint by alleging that in addition to the amounts alleged to have been paid by the defendant there was a further sum of $200 paid November 17, 1894, and amended the prayer for judgment by making the same for $500, with interest thereon from November 17, 1894. At the close of the trial the jury, by direction of the court, returned a verdict in favor of the plaintiff for $500, with interest thereon from November 17, 1894. From the judgment entered thereon for that amount and costs the defendant brings this appeal.

Error is assigned because at the close of the testimony

the court refused to direct a verdict in favor of the defend-
ant. This is urged upon the ground that the complaint fails
to state a cause of action, and that such defect is not cured
by the evidence. The defendant contends that, until the
whole number of shares contemplated and specified in the
contract of subscription have been taken, no call can be
made. In the early case in Massachusetts which counsel
for the defendant cites as the leading case on the subject,
the act creating the corporation provided that the capital
stock should be divided into 5,000 shares, not exceeding $100
each, and that after 1,000 shares should be subscribed a
meeting of the proprietors might be called, at which any
acts might be done " for the purpose of organizing the cor-
poration and arranging its affairs," and it was " held that
no legal assessment could be made for the *general* objects of
the act of incorporation until all the shares should have
been subscribed for, but that an assessment laid to defray
preliminary expenses incurred in obtaining the act of incor-
poration and ascertaining the practicability and utility of
the enterprise would be valid," and that the subscribers
were personally liable for such assessment. *Salem Mill Dam
Corp. v. Ropes*, 6 Pick. 23. The subscription in that case
required the subscribers " to pay all such legal assessments
on each of said shares as shall be made by the future gov-
ernment of said corporation, *after* the same shall have been
organized according to said act." The decision is to the
effect that defendant was only liable according to the terms
of his subscription and the act creating the corporation. In
another case cited by the defendant it was held that " when
the number of shares in the stock of a corporation is fixed
by its charter, an assessment made before the whole number
of shares is subscribed for is invalid." *Stoneham B. R. Co.
v. Gould*, 2 Gray, 277. These cases fairly illustrate the po-
sition of the defendant's counsel. But it has also been held
in that state that " a railroad corporation authorized by its

charter to commence the construction of its road whenever
a given number of shares has been subscribed for, can assess
the shares when the subscriptions have reached that num-
ber, although the whole number of shares has not been de-
termined. *Boston, B. & G. R. Co. v. Wellington,* 113 Mass. 79.
And that rule has been expressly sanctioned by the same
court in the later case cited by the defendant's counsel.
*Eaton v. Pacific Nat. Bank,* 144 Mass. 274, 275, citing other
cases. So in another case cited by counsel for the defend-
ant it is held that " where, in a subscription to the stock of
a corporation, a subscriber promises, without any condition,
to take and pay for a certain number of shares at the par
value therein named, the promise is binding, even though
the amount of the capital stock was not fixed and the min-
imum number of shares named in the charter were not sub-
scribed for." *Skowhegan & A. R. Co. v. Kinsman,* 77 Me.
370.

The difficulty with the defendant's contention is that it is
not supported by any adjudication cited by him and appli-
cable to the facts of this case. Here the complaint expressly
alleges that November 28, 1892, the plaintiff was a duly
organized corporation and existing under the laws of this
state, and authorized to issue shares of its capital stock and
to receive subscriptions in payment therefor, and to do the
business stated, and do all other acts and things necessary
and proper for the carrying on of such business; that the
defendant subscribed as stated, and that the plaintiff ac-
cepted such subscription; and that the defendant had paid
thereon one half of the amount of such subscription. The
answer not only fails to deny the corporate existence of the
plaintiff as provided by statute (sec. 4199, Stats. 1898), but
expressly admits that November 28, 1892, the plaintiff was
a corporation duly organized and existing under and by vir-
tue of the laws of this state, and that it continued to be and
now is a corporation organized and existing, as more spe-

cifically set out and alleged in the complaint. Of course, the statute applicable necessarily enters into the contract and binds the parties. Counsel for the defendant cite and seem to rely upon *Anvil M. Co. v. Sherman,* 74 Wis. 226, where it is held that "No call or assessment, subsequent to the preliminary one, upon the subscription to the capital stock of the corporation can be made unless, in compliance with sec. 1773, R. S., at least one half of the stock has been subscribed, and at least twenty per cent. thereof actually paid in. And this is so even though the subscriber agreed 'to pay the balance on each share at such times and in such instalments as the same *shall be called for* by said corporation.' In an action to recover *a call or assessment* the complaint must aver compliance with said sec. 1773, R. S." But that case is clearly distinguishable from the case at bar, since this is not an action to recover a call or assessment, but an action upon an express contract. *Estell v. Knightstown & M. T. P. Co.* 41 Ind. 174; *Morrison v. Dorsey,* 48 Md. 461; *Phœnix W. Co. v. Badger,* 67 N. Y. 294; *Shick v. Citizens' E. Co.* 15 Ind. App. 329. True, the statute referred to in that case declares that "no such corporation shall transact business with any others than its members until at least one half of its capital stock shall have been duly subscribed, and at least twenty per centum thereof actually paid in; and if any obligation shall be contracted in violation hereof the corporation offending shall have no right of action thereon." R. S. 1878, sec. 1773. The allegations of the complaint, raised in the manner indicated, must be liberally construed; and such allegations, with the admissions in the answer, take the case out from the prohibition of the statute, and authorized the court to assume that at least one half of the capital stock had been duly subscribed, and at least twenty per cent. thereof actually paid in. We must hold, upon the admitted facts, that the defendant is liable on his subscription.

Error is assigned because the court held that the burden was upon the defendant to prove that the single director in the plaintiff company, mentioned, had authority to bind the plaintiff in the representation alleged in the counterclaim, to the effect that the plaintiff would construct a certain plant or works. Counsel for the defendant contend that such representation was a fraud upon the defendant. But no statement as to what would be done or was intended to be done *in the future* constitutes a fraud. To be such, it must relate to a present or past state of facts. *Patterson v. Wright,* 64 Wis. 289; *Sheldon v. Davidson,* 85 Wis. 138; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 64; *Field v. Siegel,* 99 Wis. 609. But a director had no power, unless specially authorized, to bind the corporation by false and fraudulent representations, or even by an express promise. *C. & N. W. R. Co. v. James,* 22 Wis. 194; *Morris v. Griffith & W. Co.* 69 Fed. Rep. 131; *Bradlee v. Warren F. C. S. Bank,* 127 Mass. 107; *Holden v. Phelps,* 135 Mass. 61. There is nothing in the record to warrant a recovery by the defendant upon either of his counterclaims. We must hold that the verdict was properly directed in favor of the plaintiff.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.

BARDEEN, J., took no part.

