William Keane, Respondant, *v.* Eleazer J. Beard, Appellant.

July 12, 1881.

1. Where the plaintiff and others advance money to the defendant with which to purchase property, to be held by a proposed corporation, and the defendant purchases the property, taking the title in his own name, and receives the profits, and the project of forming the corporation is abandoned, the plaintiff may, in an action for money had and received to his use, recover back the sum thus paid.

2. Where the plaintiff and others advance money to the defendant with which to purchase property in which each is to have an interest proportioned to the amount by him paid in, and the defendant purchases the property, taking the title in his own name as per agreement, but refuses to account

to the others, the plaintiff may recover in an action for money had and received.

3. In such cases it is not necessary to make the other subscribers parties, in the absence of the formation of a partnership.

4. *Held,* that the contract in this case was not sufficiently definite and explicit to exclude parol evidence to show its real character.

APPEAL from the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

A. J. P. GARESCHÉ, for the appellant.

GIVEN CAMPBELL, for the respondent.

THOMPSON, J., delivered the opinion of the court.

When counsel for the appellant (defendant below) stated his client's case upon the argument, it seemed to us that he stated a plain right of action on the part of the plaintiff, to which no defence had been set up which could be listened to in a court of justice. But knowing that our first impressions are often erroneous, we have gone over the record and have endeavored to look at the case from every possible point of view; and the more we have looked at it, the more we have been confirmed in the impression which we acquired on the argument. The case is in the nature of an action for money had and received by the defendant to the plaintiff's use.

The plaintiff in his amended petition states, "that on or about the tenth day of August, 1876, at the request of defendant, he advanced to him the sum of $500 to aid the defendant to purchase from the Boatman's Savings Bank, of said city, certain notes then held by said bank, made by the Guardian Building Company, of the same place, amounting to about $32,000, secured by a first deed of trust on the leasehold and building of said building company, situated on the southwest corner of Washington Avenue and Fifth Street, in said city, then worth about $50,000; that said sum of $500 was advanced to defendant by plaintiff under an agreement with defend-

ant that *a corporation should be formed which would own said notes*, and acquire said building and leasehold, and that the defendant would *take about three-fourths of the stock in said corporation, which should have a capital stock of about* $40,000 ; and it was also then agreed by defendant that plaintiff should have an interest in said notes and deed of trust when purchased, equal to the extent of his money so advanced in stock of said proposed corporation ; and plaintiff, relying upon the agreement of defendant as aforesaid, paid over and advanced said sum of $500 to the defendant, for the purpose aforesaid.

"And plaintiff says that defendant did purchase said notes from said Boatman's Savings Bank, but that he did not comply with his said agreement, but caused the said leasehold and building to be sold under said deed of trust, and bid in said property at said sale about January 1, 1877, for said notes, and caused the title to said property to be made to him (defendant), in his individual right, without the knowledge or consent of plaintiff.

"And plaintiff says that, subsequent to said purchase by defendant of said leasehold and buildings, he (plaintiff) repeatedly asked defendant to form said corporation and issue to him said stock for his said advances made as aforesaid, and plaintiff says defendant abandoned the idea of a corporation against the wishes of plaintiff, and refused to take the stock which he had promised and agreed to take as aforesaid, and refused to issue to plaintiff stock for his said advance, all in violation of his duty and agreement as aforesaid ; that thereupon it became the duty of defendant to repay to said plaintiff his said $500, and interest on same ; but plaintiff says that ever since his purchase of said leasehold and building, defendant has continuously collected large rents and profits from said property, and kept it wholly for his own use, and, though amicably requested so to do, has refused and still does refuse to pay to plaintiff his said $500, and interest from August 10, 1876, or any part thereof."

The defendant, by his amended answer, " admits that plaintiff advanced to him the sum of $500 for the purchase of the notes in petition described ; but denies that it was, at defendant's request, paid on August 10, A. D. 1876, and avers that then only one-fourth was paid, and the balance in three equal payments of four, eight, and twelve months ; denies that sum paid by defendant for purchase of the notes was $32,000, and avers that it exceeded $39,000. Avers that immediately after the purchase of said notes, and for the protection of the lien by compliance with the lease, he had to expend for back taxes, back rents, mechanics' liens, and for other charges, over $10,000 more ; admits the purchase in his own name of the property whereon said notes were secured, on or about date in petition alleged ; but denies that it was without plaintiff's knowledge or consent, and avers that it was with the full knowledge and consent of plaintiff as a means of safety to secure the prompt payment of the rents, which rents, so long as the title of the Guardian Building Company was not divested, were claimed for said company adversely to defendant and those with him interested in the purchase of said notes ; admits that he has collected the rents, but avers that they have not yet reimbursed him for his advance in the purchase of said notes.

" Denies each and every of the other material averments in said petition contained ; and for a further plea in this behalf avers that the transaction sued for herein was a joint one with defendant by plaintiff and others made, the names of whom with said plaintiff interested are John Jackson, Patrick Burns, Christopher A. Ghio, Patrick C. Murphy, and Daniel Cahill ; and for failing to make these associates hereto as plaintiff or defendant this suit should abate. Wherefore defendant prays judgment in his favor and for his costs."

From the disclosures in the bill of exceptions, it would seem that the plaintiff's counsel must have been fearful of some infirmity in his case, which we have been wholly un-

able to discover; for he made a persistent effort to keep out documentary evidence as to what the contract of the parties really was. The defendant's counsel, on the other hand, has strenuously opposed the introduction of parol evidence. The court generally overruled his objections, and these rulings constitute his chief ground of complaint. It is not necessary at all for us to consider these rulings in detail. For the defendant succeeded in getting in two documents, which, with the explanatory evidence furnished from the lips of his own witnesses, show that he has no ground of defence whatever. The first of these documents was as, follows : —

"Book of subscription for the Washington Avenue Building Association.

"ST. LOUIS, MO.

"Subscription of stock for the Washington Avenue Building Association.

"We, the undersigned, do each subscribe for, and agree to become shareholders in the capital stock of the Washington Avenue Building Association, a corporation organized, or to be organized, under the laws of the state of Missouri. Articles of association of which corporation are submitted to us, and are to be recorded in the office of the recorder of deeds for St. Louis County, Missouri, whenever all the stock is fully subscribed, to the amount and number of shares set opposite our respective names.

"The capital stock of said association is $40,000 ; each share is $100. And we respectively agree to pay our respective subscriptions in manner following, in four equal instalments, one-fourth in cash, and the balance in four, eight, and twelve months. We agree to execute our notes, of even date herewith, and bearing ten per cent per annum interest, payable to our own order, and indorsed by us in blank, said notes to be delivered to E. J. Beard.

"It is further understood and agreed that certificates of stock are only to be issued upon the payment of our re-

spective subscriptions in full; and, in case any default is made in the payment of our respective notes, or either one of them, then, in that event, the cash paid by us, or either of us, shall be forfeited to the association. .

" It is also agreed that the above subscribers will employ E. J. Beard, as agent to collect rents of the lessees of the property for a term of five years, and pay him out of the rents as collected, five per cent thereof for his services ; and that, in addition thereto, the association will pay him for his services, $2,000 within one year after its organization, which is to be in full compensation for his services.

| Names of Subscribers. | Shares. | Amount. |
|---|---|---|
| Patrick Burns | 20 | $2,000 |
| P. C. Murphy | 20 | 2,000 |
| C. A. Ghio | 20 | 2,000 |
| Daniel Cahill | 20 | 2,000 |
| William Keane | 5 | 500 |
| Jno. Jackson | 10 | 1,000" |

And the following was the second : —

" Received of Mr. William Keane, the sum of $125 cash and three notes of four, eight, and twelve months respectively, for $127.50 at ten per cent from date, the same to be applied to the purchase of the mortgage of the Guardian Building Association to the Boatman's Savings Bank, now in the hands of E. J. Beard ; and when said notes are paid, Mr. William Keane will have an interest in the mortgage to the amount of $500.          " E. J. BEARD.

" C. C. NICHOLS."

These documents, with the explanatory evidence, show that there was a corporation in St. Louis called " The Guardian Building Company," which had owned the building in question ; that the Boatman's Savings Bank held notes secured by a first deed of trust upon this property amounting in the aggregate to $39,266.75 ; that the Guardian Savings Bank had held the notes of this company to the extent of $15,000, secured by a second deed of trust

upon the property; and that it had foreclosed this deed of trust and become the owner of the fee; that the plaintiff, the defendant, Patrick Burns and Patrick C. Murphy, whose names are signed to the foregoing stock subscription, were directors and stockholders of the Guardian Savings Bank; that the property was about to be sold under the deed of trust securing the notes held by the Boatman's Savings Bank; that the Guardian Savings Bank was unable to clear off this deed of trust; that, in order to save what it had advanced under the second deed of trust, the scheme of forming a company to purchase the first deed of trust was set on foot; that the plaintiff and each of the other persons whose names are subscribed to the subscription list above set out, paid *to the defendant* the sums for which they had so subscribed; that the defendant used this money, together with his own money, in purchasing the notes held by the Boatman's Savings Bank; that thereupon he caused the property to be sold under the deed of trust ecuring these notes, became purchaser himself and took possession, in which possession he has been ever since, enjoying the rents and profits. It also appears that there were other liens and charges upon the property, consisting of back taxes, mechanics' liens, arrears of ground rent, and the like, to the extent of between $9,000 and $10,000, which the defendant was compelled to discharge, in addition to what he contributed toward the purchase of the notes held by the Boatman's Bank. It also appears that the property is a leasehold, and is subject to an annual ground rent of $8,000; that the defendant is now receiving for the rent of the building annually, about $18,000, and has received at least this sum annually since he entered into possession on January 1, 1877. It thus appears that the defendant is receiving, exclusive of ground rent, an income from the property amounting to $10,000 a year, which is more than twenty per cent of the total amount which was paid by himself and the others to secure possession of the

property and clear off the encumbrances. If, from this, taxes and insurance are deducted, it is a reasonable inference, from the testimony, that the property is yielding a net annual income of about $7,000 on an investment of $50,000.

Upon such a case, no jury properly instructed, could have done otherwise than find for the plaintiff. The court might well have directed the jury so to find, without giving any other instructions. But, nevertheless, the learned judge put the case to the jury upon instructions offered by the plaintiff, and also upon instructions offered by the defendant, embodying their respective theories; and the jury, in finding for the plaintiff, must have found that the foregoing facts were true. The only error which we can perceive in the instructions, is an error in favor of the defendant. For, as we have already stated, it seems to us that the facts set up by the defendant constitute no defence to the action. It was error to tell the jury that if they found those facts to be true the plaintiff could not recover. If the judgment had gone for the defendant, we should have been compelled to reverse it upon this ground. The court refused but three instructions offered by the defendant, and they were as follows : —

" The court instructs the jury that if they believe from the evidence that, the plaintiff subscribed under a written agreement with Hardy & Simmons, and in pursuance of such subscription paid the $500 to defendant in pursuance of such written subscription with Hardy & Simmons, then plaintiff cannot recover unless such written agreement be shown.

" The court instructs the jury that if they believe from the evidence that for the subscription by plaintiff to defendant made, defendant gave a receipt embodying the terms of the contract between them, in the absence of such receipt plaintiff is not entitled to recover.

" If the jury find from the evidence that the receipt read

in evidence constitutes the contract between the parties, and was drawn to embody the terms of the contract between them, then the plaintiff is not entitled to recover."

It would have been nonsense to give the first, because the written subscription in pursuance of which the plaintiff paid the $500 was in evidence. It was put in evidence by the defendant against the objection of the plaintiff. The same may be said of the second instruction. There was no " absence of such receipt;" the defendant himself put it in evidence against the objection of the plaintiff.

The third instruction was also rightly refused. This instruction embodied in a sentence the whole defence, and, as we have already stated, it is no defence whatever. The written receipt above set out could not rightfully be treated as the only contract between the parties. It was not sufficiently specific and definite in its terms to exclude parol explanation. The court did right in letting in parol evidence as to what the contract really was. The receipt merely showed that the plaintiff was to have an interest in the notes held by the Boatman's Bank in proportion to the $500 advanced by him, but it said nothing more; it did not tell how that interest was to be expressed — how it was to be worked out, what was to be done with the notes when purchased, what evidence the plaintiff was to receive of his interest in this purchase, or how his interest was to be declared so as to assume the nature of vendible property. Manifestly, it did not embody the entire understanding of the parties, and its very indefiniteness indicated the existence of a suppletory understanding or contract. This suppletory understanding has been fully shown by the subscription-book of the Washington Avenue Building Association, which the defendant put in evidence, and by the testimony of his own witnesses, Nichols and Lubke.

But suppose it had not been shown; suppose the rights of the parties stood upon this receipt alone as the only contract existing between them, and what then is the case?

That the plaintiff contributed $500 towards the purchase of a certain mortgage; that the defendant received the money and used it in purchasing the mortgage; that he took the title in his own name; that he has ever since enjoyed the possession of the property and of its rents and profits, refusing to pay anything to the plaintiff, or to admit him to any interest in the property. The wrong which has been done to the plaintiff will appear from this: Whether the theory of the plaintiff that there was to be a corporation, or that of the defendant that there was not, is correct, it is equally clear that the plaintiff was to have a vendible interest in the property purchased. Let it be granted that the defendant does not repudiate the trust. Let it be granted that the defendant took the title in his own name for the purpose of carrying out the trust, and that he is collecting the rents and profits and putting them in his own pocket merely to repay his own advances, and what still is the plaintiff's position? He has paid $500 to the defendant upon an agreement to give him an interest in certain property, and the defendant has given him no interest which he can sell or dispose of — nothing in the nature of property; for the *jus disponendi* is involved in the very idea of property. If the plaintiff's contention is the true one, he should have had an interest represented by five shares of the stock of the Washington Avenue Building Association, which he could have transferred at pleasure. If the defendant's position is the true one, the plaintiff is a tenant in common with the defendant of the property purchased, and it is the duty of the defendant to declare the plaintiff's rights by deed, so that the plaintiff can sell his undivided share of the property if he wishes to do so. It is clear of doubt that the giving of the instruction would have been erroneous.

There is but one other question which seems to justify consideration. The defendant pleads that the transaction in question was a joint one in which John Jackson, Patrick

Burns, Christopher A. Ghio, Patrick C. Murphy, and Daniel Cahill were interested with the plaintiff; and that, for his failure to join these associates as plaintiffs or defendants, the suit should abate.   We suppose that if it should appear that the plaintiff and the other persons named had entered into a partnership with the defendant for the purchase and owning of the property in question, the plaintiff could not recover, in an action at law, the money which he had put into the partnership fund.   But no partnership has been formed.   The defendant, by taking title in his own name, converting the rents and profits, and repudiating the rights of the other adventurers, has prevented the undertaking from assuming the character of a partnership.   It was a mere *project*, which, through the fault of the defendant, has not been carried out according to the intention of the projectors.   That such was this case the jury must evidently have found under the instructions of the court.   It is well settled that a partnership is not created by an agreement to organize a future partnership or corporation.   As long as it remains a mere project, there is no partnership.   *Walstab* v. *Spottiswood*, 15 Mee. & W. 500; *Forrester* v. *Bell*, 10 Irish L. 555; *Fox* v. *Clifton*, 6 Bing. 776; *s. c.* 9 Bing. 115; *Bourne* v. *Freeth*, 9 Barn. & Cress. 632; *Hutton* v. *Thompson*, 3 H. L. Cas. 161; *Fay* v. *Noble*, 7 Cush. 188.   It is equally well settled that a person who has paid his money for shares in a company which never comes into existence, and towards a *scheme* which is abandoned before it is carried into execution, has paid it on a consideration which has failed, and he may recover it back in an action at law for so much money had and received to his use, unless it can be shown that he has consented to, or acquiesced in, the application of the money which the directors or managers of the enterprise have made.   *Nockells* v. *Crosby*, 3 Barn. & Cress. 814; *Aspetel* v. *Sercombe*, 5 Exch. 147; *s. c.* 6 Eng. Rail. Cas. 224; 19 L. J. (Exch.) 82; *Ward* v. *Loudesborough*, 12 C. B. 254; *Vallans* v. *Fletcher*, 1 Exch.

20; *Chaplin* v. *Clarke*, 4 Exch. 402. And he may maintain a bill in equity for the same purpose. *Colt* v. *Woolaston*, 2 P. Wms. 153; *Greene* v. *Barrett*, 1 Sim. 45; *Williams* v. *Page*, 24 Beav. 654; *Railroad Co.* v. *Brodie*, 9 Hare, 822. See also *Williams* v. *Salmond* (2 Kay & J. 463), where this rule was recognized, though the bill was dismissed.

The plaintiff, then, has his election between an action at law and a suit in equity, and he cannot be turned out of court because he chooses the former.

The judgment of the circuit court is affirmed. All the judges concur.