Ernst Schierenberg, Respondent, v. Lon V. Stephens, Receiver, Appellant.

St. Louis Court of Appeals, November 13, 1888.

National Bank: INCREASE OF STOCK: SUBSCRIBERS' RIGHTS AND LIABILITIES. Where a national bank determined in due form to increase its capital stock from three hundred thousand dollars to five hundred thousand dollars, but the new stock subscriptions never exceeded the sum of one hundred and thirty thousand and sixty dollars, whereupon the bank advertised an increase to four hundred and thirty thousand and sixty dollars, but this assumed increase was never authorized by a vote of the stockholders and was never certified to the United States comptroller of the currency, or by him approved or certified ; and where the plaintiff had subscribed and paid in two thousand dollars for so much of the proposed addition of two hundred thousand dollars to the original stock. *Held* that the plaintiff did not thereby become a stockholder ; and, upon the bank's insolvency, was entitled to be treated as a creditor to the amount paid in by him, and to have judgment against the receiver for payment of the same in due course of his administration of the assets.

*Appeal from the St. Louis City Circuit Court.*—Hon. Leroy B. Valliant, Judge.

Affirmed.

*Draffen & Williams* and *D. W. Shackleford*, for the appellant.

The plaintiff subscribed for twenty shares of the proposed increase of stock, and without waiting until the entire amount was taken, or to see what the future action of the association might be, voluntarily paid the sum subscribed by him, and permitted the bank to hold out the money so paid as part of its assets, and constituting part of its capital stock. If there had been an express condition in the subscription, that it should not be valid until the entire amount of the increase was taken, this action upon plaintiff's part

would have amounted to a waiver of the condition. *In re Cornell*, 5 Cent. Rep. 181; *Delano v. Butler*, 118 U. S. 634; *McDearmott v. Donagan*, 44 Mo. 85; 1 Morawetz on Priv. Corp. [2 Ed.] secs. 91, 308; 2 Morawetz on Priv. Corp. sec. 823; Thompson on Liabilities of Stockholders, sec. 170; *McDougall v. Lane*, 18 Ga. 444. If it be held that the provisions of the United States statutes, in regard to the method of increasing the stock, entered into and formed a part of plaintiff's contract with the bank, and that his subscription must be taken to have been made upon condition that all of the statutory requirements were to be fully complied with before it should become binding upon him, still, so far as plaintiff is concerned, he ought to be in no better position than if he had subscribed upon any other condition, which had been expressly set out in his contract. In the latter instance the condition might be waived by him, and his actions, in the case at bar, would have amounted to such waiver. The same rule should apply here. *Delano v. Butler*, 118 U. S. 634; *Butler v. Aspinwall*, 33 Fed. Rep. 217; *Ins. Co. v. Sherwood*, 72 Mo. 461; *Chamberlain v. Railroad*, 15 Ohio St. 225; *Hotel Co. v. Hunt*, 57 Mo. 126; *Payne v. Stoever*, 2 Dillon, 427; 1 Morawetz on Corp. [2 Ed.] secs. 72, 73; *Clark v. Thomas*, 34 Ohio St. 4662; *Rensselaer v. Wetzel*, 21 Barb. 56. The plaintiff cannot recover on the ground that his subscription was without consideration, or that the consideration therefor failed. There may be a *de-facto* increase of stock in an existing corporation, although the statute in reference to the method of increasing the stock has not been complied with. The duty and necessity of performing the contract of subscription in such cases is the same as when subscriptions are made for stock in a *de-facto* corporation. The allegations in the answer show that there was a *de-facto* increase of the stock in the case at bar, and that plaintiff had subscribed and paid for shares thereof. *Chubb v. Upton*, 95 U. S. 665; *Case v. Galli*, 94 U. S. 673; 2 Morawetz on Corp. [2 Ed.] sec. 755; *Railroad v. McPherson*, 35 Mo. 13; *Hotel Co. v. Hunt*, 57 Mo. 126; *Hotel Co. v. Harris*, 51 Mo. 464;

*Wheeloch v. Kost*, 77 Ill. 293 ; *Keyser v. Hitz*, 2 Mack.
473 ; *Bank v. Society*, 44 Conn. 582. After the plaintiff
has recognized the validity of the increase of stock, he
is in no position to question it. "Whether the stock
has been properly increased is a question the state only
can raise." *Pullman v. Upton*, 96 U. S. 328 ; 2 Mora-
wetz on Corp. [2 Ed.] 762 ; *Bank v. Matthews*, 98 U. S.
621. The plaintiff, as against creditors, under the facts
set up in the answer, is estopped from maintaining this
suit. *Veeder v. Mudgett*, 95 N. Y. 295, 310 ; *Hoyt v.
Mining Co.*, 78 N. Y. 159 ; *Clark v. Thomas*, 34 Ohio
St. 46 ; *Chubb v. Upton*, 95 U. S. 665 ; *Ins. Co. v.
Manuf. Co.*, 37 Am. Rep. 129 ; *Savings Ass'n v.
Schroeder*, 8 Gil. & J. 93. An action for money had and
received is in the nature of an equitable action. A party
who sues to recover what he has voluntarily paid, must
show that he is entitled to same *ex aequo et bono*. It is
not sufficient to prove that, orginally, he was not bound
to pay. *Buell v. Boughton*, 2 Denio, 91 ; *Worseley v.
New Orleans*, 41 Am. Dec. 333 ; *Bidwell v. Railroad*,
5 Cent. Rep, 287. The receiver represents the association
and the creditors. "The creditors must seek their rem-
edy through him. They cannot proceed directly or indi-
rectly in their own names against the stockholders or
debtors of the bank." He can, as representative of the
creditors, make any defense or assert any right that
would be available to them. *Kennedy v. Gibson*, 8
Wall. 498 ; Ball on National Banks, 233 ; Bolles on Nat.
Bank Act, sec. 189 ; *Delano v. Butler*, 118 U. S. 634 ;
*Case v. Terrill*, 11 Wall. 199 ; *Bank v. Colby*, 21 Wall.
609 ; *Casey v. La Societe*, 2 Wood, 77 ; *Case v. Bank*, 2
Woods, 23 ; *Bank v. Price*, 22 Fed. Rep. 697 ; *Trust
Co. v. Miller*, 33 N. J. Eq. 155 ; *Hayes v. Kenyon*, 7 R.
I. 136 ; *Stokes v. Pottery Co.*, 46 N. J. Law, 237. Plain-
tiff having voluntarily paid the money cannot recover
the sum so paid. *Peebles v. City*, 101 Pa. St. 304 ; *Bank
v. Kehlor*, 7 Mo. App. 158 ; *Gibson v. Bingham*, 43 Vt.
410.

*Klein & Fisse* and *John K. Tiffany*, for the respondent.

To constitute a valid increase of the capital stock of a national bank it is requisite to perform and observe all the conditions prescribed by the statute.   U. S. Rev. Stat. 1878, sec. 5142 ;   24 U. S. Stat. at Large, p. 18, chap. 73, sec. 1 ;   *Delano v. Butler*, 118 U. S. 634, 649 ; *Eaton v. Bank*, 144 Mass. 260, 270 ;   *Charleston v. Bank*, 5 Rich. [S. C.] 103, 115 ;   *Haskell v. Worthington*, 94 Mo. 560.   In this case the whole amount of the proposed increase was never paid, nor did the comptroller ever approve such increase of stock, nor issue his certificate as required by law.   There is no averment in the answer that the plaintiff participated in any of the transactions alleged, had knowledge thereof, or derived benefit therefrom.   *Bates v. Perry*, 51 Mo. 449, 453 ; Bigelow on Estoppel, 438 ; *Acton v. Dooley*, 74 Mo. 63, 67.   The officers and directors of the bank, in making declarations to the comptroller and to the public, were not acting as agents of the plaintiff, and he is not bound thereby.   *Scoville v. Thayer*, 105 U. S. 143, 151 ; *Stace & Worth's case*, L. R. 4 Ch. App. 682.   No person had any right to rely upon representations of the bank's officers concerning its capital.   The law provides ample means of information, and reliance on statements made otherwise is unnecessary and unauthorized.   U. S. Rev. Stat. secs. 5135, 5142 ; *Pierce v. Railroad*, 21 How. [U. S.] 441, 443 ; *Ins. Co. v. Hastings*, 2 Allen [Mass.] 398. Where money is paid by one party in consideration of an act to be done by another, the money so paid may be recovered back if the act is not done.   *Reina v. Cross*, 6 Cal. 29, 31 ; *Allen v. Citizens*, 22 Cal. 28 ; *Jewett v. Railroad*, 10 Ind. 539 ; *Davis v. Marston*, 5 Mass. 199 ; *Carter v. Carter*, 14 Pick. [Mass.] 424 ; *Kerrigan v. Kelly*, 17 Mo. 275 ; *King v. Hutchins*, 28 N. H. [8 Fost.] 561, 574 ; *Lyon v. Annable*, 4 Conn. 350 ; *Wheeler v. Board*, 12 Johns. [N. Y.] 363.   If money is intrusted to a third party for a particular purpose, and

such third party fails to apply it to that purpose, an action for money had and received will lie to recover it back. *Parker v. Fisher,* 39 Ill. 164; *White v. Merrell,* 32 Ill. 511. Where the consideration on which money was paid fails, the money may be recovered back in an action for money had and received. *Spring v. Coffin,* 10 Mass. 34; *Pettibone v. Roberts,* 2 Root [Conn.] 258; *Steele v. Hobbs,* 16 Ill. 59; *Woodward v. Fels,* 1 Bush [Ky.] 162; *Putnam v. Westcott,* 19 Johns. [N. Y.] 73; *Briggs v. Vanderbilt,* 19 Barb. [N. Y.] 222; *French v. Millard,* 2 Ohio St. 44, 52.

ROMBAUER, P. J., delivered the opinion of the court.

The only error assigned on this appeal is that the trial court erred in sustaining a demurrer to certain parts of the defendant's answer; it is therefore essential, in reviewing the propriety of the action of the court, to set out in full such parts of the pleadings as bear upon that question.

The action was instituted against the Fifth National Bank corporation and its receiver. During the pendency of the proceedings, and before judgment on the demurrer, the corporation was dissolved, the action against it abated, and judgment was rendered against the receiver, who alone appeals.

The petition against the bank and its receiver states: That the said bank was at the time of the filing of said petition, and at the several times therein mentioned, a body corporate, duly organized under the laws of the United States relating to national banks, with a duly authorized capital stock of three hundred thousand dollars, and that said bank did business up to the eighth day of November, 1887, as a national bank.

That on the eighth day of November, 1887, said bank, which was then and for a long time prior thereto, had been absolutely insolvent, suspended business, and the comptroller of the currency of the United States, after due examination of the affairs of said bank, did become satisfied of its insolvency, and did thereafter, on or about the fifteenth day of November, 1887, appoint

the defendant Lon V. Stephens, as receiver of said' bank, under the provisions of the laws of the United States, and that said Stephens duly qualified as such receiver, and was at the time of the filing of said petition in charge and possession of the books, records and assets of every description of said bank, and collecting all debts, dues and claims belonging to it, under the direction of the comptroller of the currency of the United States, and proceeding to close up said bank.

That between the first day of February and the eighth day of November, 1887, plaintiff deposited in said bank, in monthly installments of two hundred dollars each month, on or about the first of each month during said period, the total sum of two thousand dollars ( $2,000 ), the last of said deposits being made by him on or about the first day of November, 1887 ; that the said sums were deposited by him in said bank and received by it to be held in trust for and to the use of plaintiff, and to be applied by said bank in payment for twenty shares of the par value of one hundred dollars each of a proposed increase of the capital stock of said bank in the sum of two hundred thousand dollars, so that the entire capital stock of said bank should be five hundred thousand dollars ; and that said twenty shares of such proposed increase of the capital stock of said bank were to be issued and delivered to plaintiff by said bank when this plaintiff should have deposited in said bank the full sum of two thousand dollars, the par value thereof, and when the whole amount of such proposed increase of two hundred thousand dollars of said capital stock should have been paid into said bank, and when the certificate of the comptroller of the currency of the United States, specifying the amount of such increase of capital stock, with his approval thereof, and that it had been duly paid in as part of the capital stock of said bank, should have been obtained.

That at the time of making the several deposits aforesaid in said bank for the purpose and upon the conditions aforesaid, plaintiff had no knowledge of the

insolvency of said bank, nor of the illegality in the proceedings attempting to authorize the said proposed increase of its capital stock in the sum of two hundred thousand dollars, but since the suspension of said bank has learned thereof. And the plaintiff alleges that said proposed increase of the capital stock of said bank was never lawfully authorized by the owners of two-thirds of the capital stock of said bank, nor did two-thirds of the owners of said original capital stock ever vote for such increase, as required by law; nor was the whole amount of two hundred thousand dollars of such proposed increase of stock ever paid into said bank, as required by law, nor was the amount of such proposed increase of stock which was agreed to be taken and paid for ever paid into said bank; nor was the certificate of the comptroller of the currency of the United States, specifying the amount of said proposed increase of capital stock, with his approval thereof, and that it had been paid in as part of the capital of said bank, ever obtained; but by reason of the insolvency and suspension of said bank and the consequent winding up of its affairs, none of said conditions and requirements have been or can now or ever be fulfilled or complied with on the part of said bank, nor can the contract between said bank and this plaintiff in reference to said twenty shares of stock ever be completed or performed.

The plaintiff further alleges that said bank treated the amount so received by it from him as a trust fund for his benefit, and that by reason of the circumstances aforesaid, plaintiff is entitled to the said sum of money and the said bank is indebted to him therefor, and also for lawful interest thereon.

The plaintiff also alleges that he had presented his claim for said sum of money so due him to the said defendant Lon V. Stephens, as receiver, and demanded the allowance thereof against the estate of said bank, but that the said receiver had refused and still refused to allow the same. Wherefore, plaintiff prays judgment against the Fifth National Bank of St. Louis and

its assets in the hands of said receiver for the said sum of two thousand dollars, with interest from the days of said several deposits, and for his costs in this behalf, and for such other and further relief as plaintiff may be entitled to under the circumstances of the case.

The defendants filed their joint and several answer to the plaintiff's petition, whereby it is admitted that the Fifth National Bank was at the several times named in the petition a body corporate, duly organized and existing under the laws of the United States relating to national banks, and that said bank did business until November 8, 1887, as a national bank. By said answer it is also admitted, that said bank suspended business on the eighth day of November, 1887, and that the comptroller of the currency of the United States, on the fifteenth day of November, 1887, appointed the defendant Lon V. Stephens, receiver of said bank, under the provisions of the laws of the United States, and that said Stephens duly qualified as such receiver, and is acting as such. All the other allegations of the petition were specifically denied in the answer.

And the following additional defense was pleaded therein, namely : '' The defendants, for further answer and defense to plaintiff's petition say, that the defendant the Fifth National Bank of St. Louis, Mo., was, on the twenty-seventh day of November, 1886, and for a long time prior thereto had been, duly organized under and in accordance with the provisions of the laws of the United States for the organization of national banks, and that its capital stock at that time was three hundred thousand dollars ; that on said twenty-seventh day of November, 1886, the board of directors of said bank called a meeting of the stockholders thereof, to be held at the office of said bank on the eleventh day of December, 1886, to vote upon a proposition to increase the capital stock of said association in the sum of two hundred thousand dollars ; that a meeting of said stockholders was held at said time and place, and the

following resolution was adopted by a vote of more than two-thirds of the stockholders of said association, to-wit: ' Resolved, that under the provisions of the act of May 1, 1886, the capital stock of this association be increased in the sum of two hundred thousand dollars ; ' that the defendant subscribed unconditionally for twenty shares of said stock, and agreed and bound himself to pay therefor the par value thereof, to-wit, the sum of two thousand dollars, and afterwards did voluntarily pay to said bank the said sum upon his said subscription for said twenty shares of stock, as aforesaid ; that there was subscribed and paid, including the plaintiff's subscription aforesaid, on the fifth day of October, 1887, the sum of four hundred and thirty thousand and sixty dollars as the capital stock of said bank ; that the officers of said bank reported to the comptroller of the currency of the United States that the capital stock of said bank had been increased, and that the total amount of its capital stock at said date was four hundred and thirty thousand and sixty dollars, and the said sum of one hundred and thirty thousand and sixty dollars, including the plaintiff's subscription, as aforesaid, was treated by plaintiff and other stockholders of said company, and the officers thereof, and the comptroller of the currency of the United States, as a part of the capital stock of said bank, and the subscribers thereto as stockholders in said bank, to the amount of their several respective subscriptions ; that said bank, in order to increase its business and to obtain credit, with the knowledge and consent of the plaintiff, held out to the public and advertised that its capital stock had been increased, and included in the statement of its said capital stock the amount subscribed and paid in for the new stock aforesaid, thereby advertising its stock as four hundred and thirty thousand and sixty dollars, and with the knowledge and consent of the plaintiff represented the amount sued for by him as a part of its capital stock and subject to assessments as such, and thereby constituting assets of said bank instead of a liability upon its part, as alleged by plaintiff in his petition ; that said

increase of stock was recognized and treated by the stockholders and officers of said bank, and held out to the public as valid and binding and constituting part of the capital stock of said bank, and that said bank obtained credit and contracted debts now unpaid upon the faith thereof ; that the money sued for by plaintiff was paid voluntarily by him, and was treated by him as a payment for stock, as aforesaid, and not otherwise. Wherefore, defendants say plaintiff is not entitled to the judgment prayed, or any judgment herein, and they ask to be hence dismissed with costs."

In due time the plaintiff demurred to this affirmative defense set up in the answer, on the following grounds :   (1) Because said part of said answer does not state facts sufficient to constitute a defense to the plaintiff's action herein.   (2) Because the allegations contained in said part of said answer are wholly insufficient to constitute a defense to plaintiff's action, and because the matters and facts therein alleged are insufficient to create any liability on the part of this plaintiff as a stockholder in said Fifth National Bank.   (3) Because it is nowhere alleged in said part of said answer, that the whole amount of the proposed increase in capital stock mentioned in said answer has ever been paid in. (4) Because it is nowhere alleged in said part of said answer, that any notice of said increase of capital stock of said bank has ever been transmitted to the comptroller of the currency of the United States, or his certificate obtained, specifying the amount of such increase of capital stock, with his approval thereof, and that it has been paid in as part of the capital of said association. (5)   Because the matters and facts pleaded in said part of said answer by way of estoppel are utterly irrelevant, immaterial and insufficient to constitute any defense to this action.

This demurrer was sustained by the court, and upon a trial of the remaining issues the court rendered a judgment in favor of plaintiff for the amount claimed.

The receiver's first contention is that the plaintiff,

by subscribing for twenty shares of the proposed increase of stock unconditionally, and by voluntarily paying therefor without waiting until the entire amount was taken, waived whatever condition was attached to the subscription and became absolutely bound.

To create a valid increase of the capital stock of a national bank, under the law as it stood when the increase of the stock of this bank is alleged to have been made, a preliminary vote of the shareholders owning two-thirds of the stock, the payment into bank of the whole amount of increase, and the certificate of the comptroller of the currency, specifying the amount of the increase and his approval thereof, and certifying to the fact of payment, were essential. The law provides that no increase of the capital stock of any national banking association shall be made except in the manner therein provided. It is not questioned that these conditions entered into and formed part of the plaintiff's contract of subscription. The pleader's averment that the plaintiff subscribed unconditionally and afterwards paid voluntarily admit legally only of the construction that his subscription was subject to no other conditions than those imposed by the statute, and that his payment was voluntary in the sense in which the performance of conditions precedent is voluntary on the part of any one, who by such performance seeks the ultimate benefit of a contract.

The receiver contends that, since an express condition of subscription may be waived by recognizing the subscription as valid, this is a fortiori, the rule where the condition is merely implied. An examination of the cases will show that as between the contracting parties this is the case only where both parties have the legal power to waive the condition, as was the case in Delano v. Butler, infra, or where a contract has been executed in whole or in part, and one of the parties assumes to retain the consideration received, and yet seeks to repudiate the obligation imposed upon him on the ground of the legal invalidity of the contract, as

was partly the case in *Delano v. Butler*, and wholly the case in *Home Ins. Co. v. Sherwood*, 72 Mo. 461. In fact, under the American rule, executed contracts, even though *ultra vires*, if not wholly illegal, are generally upheld on the ground of equitable estoppel. Green's Brice, Ultra Vires, 729, note *a*.

These elements are missing in the case at bar, if we are correct in our view that the conditions prescribed by the national bank act, are essential requisites to the issue of legally valid stock. It is not pretended in the answer that two-thirds of the stockholders of the bank ever voted for an increase of the stock to four hundred and thirty thousand and sixty dollars, and whether they ever would have done so, even if the bank had continued in business, rests on bare conjecture. That they never can do so, the bank having been dissolved, is conceded. It is not pretended that the comptroller of the currency ever issued his certificate signifying his approval of the increase to four hundred and thirty thousand and sixty dollars, even if he had the legal power to do so, which proposition, under the admitted facts, we must deny. That the bank could not issue or make a valid sale of the new stock, unless the requirements of the law were complied with at some time or other, is self-evident ; such sale at best was voidable, and upon the termination of the possibility of its validation by matter subsequent, became void.

It will be seen, upon a careful examination of the case of *Delano v. Butler*, 118 U. S. 645, that the opinion and decree of the supreme court is in no way opposed to the views herein expressed. Under the law as it then stood, every condition requisite to a valid increase of the capital stock of the Pacific National Bank had been complied with prior to the time when the defendant was called upon to respond to his obligations as a stockholder. True it is, that such conditions had not been complied with when the defendant paid for the stock and accepted the certificate, but they were fully complied with thereafter ; he had full knowledge of the fact that they had been then complied with,

and that he was considered a stockholder, and with knowledge assented to the reduced amount of stock, and voluntarily paid the assessment imposed by the stockholders upon themselves to secure the further continuance of the bank in business. It was only when the bank became finally insolvent that he sought to repudiate his obligation. The parties there had the legal power to waive the condition and waived it by their concurrent action, and after such waiver the contract, even if voidable before, became fully executed, and the defendant became a shareholder on the plainest principles of an equitable estoppel. The defendant received his certificate, acted as a shareholder and could not equitably assume the position that the corporation was estopped from denying his rights as a shareholder if successful in its enterprises, and yet he was not estopped from repudiating his duties as a stockholder if the corporation was unsuccessful.

The position of the receiver in this case is the reverse. His contention practically asserts, that as between the bank and the plaintiff, the bank could enforce plaintiff's liability as a stockholder, but the plaintiff was powerless to enforce his rights as such. That the bank could retain the plaintiff's money, without giving him anything in return, even though that money was paid by the plaintiff upon the sole consideration of the stock to be issued, and even though, by the very terms of the act, the plaintiff was bound to pay the money into the bank before the stock for which the money was thus paid came into legal existence.

The receiver further contends that the allegations in the answer which were adjudged bad on demurrer, are sufficient to show that there was a de-facto increase of the stock, if not one de jure, and that the same rule should govern this case, which governs subscriptions to the stock of de-facto corporations. To maintain the position the case of Chubb v. Upton, 95 U. S. 665, is mainly relied on, and the following language, used by Mr. Justice HUNT, quoted, and stress laid on

the sentences which are printed in italics. "It is settled by the decisions of the courts of the United States, and by the decisions of many of the state courts, that one who contracts with an acting corporation cannot defend himself against a claim on such contract in a suit by the corporation, by alleging the irregularity of its organization. * * * *The rule applies to increasing the stock of the corporation, when the question arises upon paying his subscription for stock forming a part of such increase. The duty and necessity of performing the contract of subscription, are the same as in the case of an original stockholder."*

How far a stockholder in a suit by a creditor of the corporation, or by one representing creditors (which was the case in *Chubb v. Upton*), may estop himself by his subscription to question the legal validity of the contract depends on circumstances. When the defense is equivalent to a plea of *nul tiel* corporation, it is generally disallowed on the ground that a contract entered into with a corporation in its corporate name is an admission of its corporate existence. It is disallowed when it militates against the well-established doctrine that the capital stock of a corporation is a trust fund for the payment of its creditors. We know of no case, however, which goes to the extent that, in a suit by a corporation to enforce a subscription against one who has never acted as a member of the corporation, and never participated in its proceedings in any manner, the defendant may not raise any defense which questions the validity of the contract. The case of *Kansas City Hotel Co. v. Hunt*, 57 Mo. 130, decides that he may, and the case of *Haskell v. Worthington*, 94 Mo. 560, decides that he may even in a suit by creditors. This position is not controverted by anything that is decided in *Chubb v. Upton*. In that case, as the court found, the defendant had participated in the organization and management of the corporation, "had paid his money, received his certificate of stock, had attended meetings, voted, acted as an officer, and so far as the record shows,

never repudiated his position at any time even to the time of trial."

In *Eaton v. Bank*, 144 Mass. 260, the facts of the case were identical with those of *Delano v. Butler*, *supra*, with the exception that the subscriber for part of the increased stock had not by his subsequent acts recognized the validity of the reduction in the increase which was claimed to have been brought about by the concurrent action of the bank and the comptroller of the currency, and the supreme court of Massachusetts by a unanimous opinion held that the subscriber became no stockholder, notwithstanding the subsequent validations of the stock, to which he never assented. The opinion, although opposed to a *dictum* in *Delano v. Butler*, seems logically correct, and is ably supported by reference to many decided cases. The case at bar is stronger in its facts in plaintiff's favor, because here no validation of the stock, even if capable of such validation, ever took place, or ever can take place hereafter.

It is not essential for us to decide whether the receiver in this controversy represents the bank only, or whether he represents its creditors likewise, in a sense making his rights superior to those of the bank. We fully recognize the fact that circumstances may surround a transaction of this character, which would estop a subscriber to question the validity of his subscription as against creditors, even though they had no such effect when the controversy was one between himself and the bank. *McDermott v. Donegan*, 44 Mo. 85; *Skrainka v. Allen*, 7 Mo. App. 434; s. c., 76 Mo. 384, 392. But this is no such case.

The allegation in the answer, that the plaintiff voluntarily paid his subscription, states no fact from which an estoppel can arise in favor of a creditor, since he was bound to do so by the mandates of the law prior to becoming a stockholder, and his doing so was in no sense an assertion that he was a stockholder already. The fact that the bank advertised that its stock had been increased to the amount of four hundred and thirty thousand and sixty dollars, and included in the said

amount the stock subscribed for by plaintiff with his knowledge and consent, can have no such effect, since plaintiff was powerless to prevent any such action on part of the bank prior to his becoming a stockholder. The officers and directors of the bank were not the agents of the plaintiff in making these declarations, nor had the parties who have been misled thereby any right to rely thereon. *Scovill v. Thayer*, 105 U. S. 143, 151. Whether a publication with plaintiff's knowledge and consent, stating in terms that plaintiff was a stockholder to a certain amount, would have such effect, it is unnecessary to decide, since no such allegation is made. That might make a different case, in presenting an element of fraud, which in the present instance is wholly wanting.

It results from the foregoing that the part of defendant's answer demurred to states no legal defense to the action, and that the demurrer was properly sustained.

Upon the trial of the remaining issues the court rendered judgment against the receiver for the amount paid by the plaintiff into bank, to be paid out of the assets in his hands in the course of administration. This was correct and in conformity with the course adopted under similar circumstances in *Eaton v. Bank, supra.* If the plaintiff is not a stockholder, he is a creditor. That an action for money had and received can be maintained under such circumstances has been decided by this court (*Keane v. Beard,* 11 Mo. App. 20), and has been uniformly so decided both here and elsewhere in a variety of cases, where money was paid by one party in consideration of an act to be done by another, and where the act was not done. *Kerrigan v. Kelly,* 17 Mo. 275; *Wheeler v. Board,* 12 Johns. 363; *Carter v. Carter,* 14 Pick. 424; *Jewett v. Railroad,* 10 Ind. 539; *King v. Hutchins,* 28 N. H. 561.

There is no error in the record, and with the concurrence of all the judges, the judgment is affirmed.