IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

JACKSON, APRIL TERM, 1897.

---

RAILROAD *v.* SNEED.

(*Jackson.* April 24, 1897.)

1. CORPORATIONS. *Requisites of valid increase of capital stock of railroad company.*

It is essential to a valid increase of the capital stock of a railroad corporation organized under Acts 1875, Ch. 142, made while Acts 1883, Ch. 163, was in force, that the same should be effected through an amendment of the charter granted by the State upon formal application, and probated and registered as in case of original charters. An increase made upon mere resolution of the board of directors was void. (*Post, pp. 3–14.*)

Acts construed: Acts 1875, Ch. 142; Acts 1883, Ch. 163 (repealed by Acts 1893, Ch. 146).

15 P—1

Railroad *v.* Sneed.

2. SAME. *Subscriptions to invalid increase of capital stock not collectible.*

A subscription to an increase of capital stock, made without compliance with the essential statutory conditions and requirements, cannot be enforced by the corporation. The subscriber does not thereby become a stockholder. The subscription contract is absolutely void as between the subscriber and the corporation, and he may recover back any sums paid thereon, as having been paid without consideration. (*Post, pp. 6, 7.*)

Cases cited and approved: Brewer *v.* State, 7 Lea, 682; Anderson *v.* Railroad. 91 Tenn., 44; Cartwright *v.* Dickinson, 88 Tenn., 476; 32 Mo. App., 314, 330; 37 Fed. Rep., 508; 42 Minn., 327.

Cited and distinguished: 96 U. S., 328; 41 Fed. Rep., 531; 139 U. S., 417.

3. SAME. *Subscriber to illegally increased capital stock not estopped to deny liability, when.*

That a subscriber to the increased capital stock of a corporation actively participated in obtaining the increase, became thereafter a director, and paid up a large portion of his subscription, does not estop to deny his liability, in a suit by the corporation to recover the subscription, upon the ground that the increase was illegal and void for want of compliance with essential statutory conditions and requirements. (*Post, pp. 9, 10.*)

Cases cited and approved: Anderson *v.* Railroad, 91 Tenn., 44; Cartwright *v.* Dickinson, 88 Tenn., 476; 37 Fed. Rep., 520; 105 U. S., 143; 5 Rich, 103; 32 Mo. App., 314; 139 Mass., 9–11.

---

FROM   SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

S. J. SHEPHERD and W. P. METCALF for Railroad.

THOMAS H. JACKSON for Sneed.

Railroad *v.* Sneed.

WILKES, J. This is a bill to collect the balance of a subscription made by W. M. Sneed, in his lifetime, to the increased capital stock of the complainant company. There was a decree in the Court below for the amount claimed and costs, and defendants have appealed and assigned errors.

The contention is that the estate of W. M. Sneed is not bound for the subscription, inasmuch as it was *ultra vires*, illegal, and void. There is no cross bill to recover back the amounts paid.

The railway company was organized April, 1886, under the general incorporation law of 1875, and on the twenty-fourth of May the capital stock was fixed by law at $27,000, all of which was subscribed.

On the sixth of January, 1890, the directors of the corporation passed a resolution increasing the stock to $60,000, and, on March 31, 1891, the directors, by resolution, made another increase of the capital stock to $100,000. W. M. Sneed subscribed for stock after the increase from $27,000 to $60,000, and was not an original subscriber. He became a director in the company after making his subscription. The contention is that the attempted increase of stock from $27,000 to $60,000, and afterwards to $100,000, was illegal, and not binding upon the subscriber, because not made in compliance with Ch. 163, Acts of 1883. Sneed paid calls upon his subscription, which was for $5,000 in all, as follows: April 10, 1891, $1,000; May 10, 1891, $1,000; August 3, 1891, $1,000; April 19, 1892, $100;

---
---

September 21, 1892, $175. The judgment rendered for the balance is $2,301.32, including interest upon the unpaid calls. The amount of the judgment is not questioned if there is any liability whatever, but the contention is that there is no liability. The subscription sought to be collected was made April 1, 1891.

Under the general incorporation Act of 1875, Ch. 142, it is provided that "the board of directors may, at any time, increase the capital stock, if the necessities of the corporation, in their estimation, require said increase." By the Act of 1883, Ch. 163, it is provided that any persons organized as a corporation under a charter granted by a chancery court of this State, or under the Acts of 1875, Ch. 142, approved March 23, 1875, which is the general Act of incorporation, who may desire to increase its capital stock, shall have the right to do so under and in the manner provided by the nineteenth section of said Act (of 1875). That section provides, among other things, that the board of directors shall copy the desired amendment, make formal application to the State, and have the amendment probated and registered, and its registration certified by the Secretary of State, under the great seal of the State, provisions similar to those required upon the original incorporation. This Act was in force when this increase of stock was made, though afterward repealed by Acts of 1893, Ch. 146, Sec. 1.

Railroad *v.* Sneed.

The first question presented is, What is the effect of the Act of 1883 upon the Act of 1875? It is argued before us that the Act of 1883 repeals the Act of 1875, so far as it relates to the manner in which the capital stock of a railroad may be increased, and that such repeal arises by implication, the power to repeal, modify, or amend charters, under the Act of 1875, being expressly reserved to the Legislature under Secs. 5 and 27 of that Act.

The only provision in the Act of 1875 relating to the increase of capital stock of charters taken out under that Act, is found in Sec. 6 of the Act, which simply provides, as before stated, that "the board of directors may, at any time, increase the capital stock if the necessities of the corporation, in their estimation, require said increase."

It is true that Sec. 19 prescribes how the capital stock shall be increased, but that section applies only to corporations theretofore chartered by the General Assembly, referring to such as, previous to the Constitution of 1870, had obtained their charters under special Acts of the General Assembly, and not to such as were provided for by the general law of 1875.

The Act of 1883, Ch. 163, refers alone to charters granted by a chancery court, or taken out under the Act of 1875, and prescribes that they shall pursue the same mode as prescribed by Sec. 19, Act of 1875, for charters granted by the General Assembly.

We think we need not, therefore, consider the question of the repeal of the Act of 1875 by the Act of 1883, as the latter only prescribes the manner in which the capital shall be increased, which was not prescribed or fixed under the Act of 1875, as to charters under that Act. There is no contention here that the Act of 1883, Ch. 163, has been complied with as to the application and registration required by that Act, or by Sec. 19 of the Act of 1875, to which it refers, and without such compliance the amendment or increase is void. *Brewer* v. *State*, 7 Lea, 682; *Anderson* v. *Railroad*, 7 Pickle, 44.

The question presented in this case was raised in the case of *Cartwright* v. *Dickinson*, 4 Pickle, 476, 485–487, but was not decided, not being necessary for the disposition of that case, Cartwright, the protesting stockholder in that case, being a subscriber to the original stock of the company, and not to the increased stock.

The result is that the increased stock was illegal and void, and the subscriber to the increase stands not in the attitude of a stockholder, but in that of a creditor, having advanced money upon a void contract, and, having received no consideration therefor, is entitled to recover the same back. 3 Thomp. on Corporations, Sec. 3691; *Schierenberg* v. *Stephens*, 32 Mo. App., 314; *Nichols* v. *Stephens*, 32 Mo. App., 330; *Winters* v. *Armstrong*, 37 Fed. Rep., 508. In the latter case Judge Howell E. Jackson says:

"Such a subscription is impliedly conditioned on the subscription of the whole amount of the proposed increase, and on the compliance, by the corporation, with all the requirements of the statute necessary to make the increased stock valid, and in case of non-compliance with such requirements there is a failure of consideration." It must be borne in mind, in this case, that no rights of creditors are involved. So far as the record shows, there are no creditors. The evidence is that the company has completed no road and incurred no liability now outstanding, and there is evidence tending to show that no scheme for operating any road is now under contemplation, and it is claimed that the purposes of the organization have been abandoned, and the time limited by the city for the building of the road expired in July, 1896. At any rate, the contest is here solely upon the right of the corporation to collect the unpaid subscription, not for creditors and not for any emergency, but simply to collect in an unpaid subscription.

Complainant's counsel rely upon the cases of *Pullman* v. *Upton*, 96 U. S., 328; *Stuts* v. *Handly*, 41 Fed. Rep., 531; *Handly* v. *Stuts*, 139 U. S., 417; Cook on Stock & Stockholders, Sec. 288, as holding that holders of increased stock cannot defend against their subscriptions by showing that the increase was irregularly effected, and the State alone can raise that question.

The case of *Pullman* v. *Upton*, 96 U. S., 328, was a suit by an assignee in bankruptcy on behalf

of creditors, and it does not appear but that the
stock in controversy was original and not increased
stock. The cases of *Handly* v. *Stuts* and *Stuts* v.
*Handly* were controlled by the statute of Kentucky,
which prohibited any person sued on a contract with
a corporation from relying upon a want of legal
organization of the corporation as a defense. In
these cases, which are the same, creditors were in-
terested, and were trying to collect subscriptions,
the corporation being insolvent.

Mr. Justice Brown, in delivering the opinion,
said he had no doubt the learned Circuit Judge held
correctly that it was subsequent creditors who were
entitled to enforce their claims against the stockhold-
ers, since it is only they who could, by any legal
presumption, have trusted the company upon the
faith of the increased stock, citing 42 Minn., 327;
2 Morawetz on Corp., 832, 833; 14 Fed. Rep., 12.

In Cook on Stockholders, after stating under
what conditions a subscriber to irregularly increased
stock may be held liable, especially when creditors
are concerned, says in the latter part of the sec-
tion: " But a contrary rule prevails as regards es-
sential steps in the increase. If there is no vote
of the stockholders, as required by statute, they are
not liable on the stock."

In the cases of *Schierenberg* v. *Stephens*, 32 Mo.
App., 314, and *Nichols* v. *Stephens*, 32 Mo. App.,
330, the facts are substantially the same. The
plaintiff had paid in a call upon his subscription to

increased stock in a national bank which had not been authorized by a vote of stockholders nor approved or certified by the Comptroller of the Currency. It was held that he did not thereby become a stockholder, and, upon the bank's insolvency, was entitled to be treated as a creditor to the amount paid in by him, and to have judgment against the receiver for repayment of same in due course of his administration of the assets.

But it is said that Mr. Sneed actively participated in the increase of stock, was a director in the company, and has since paid the greater portion of his subscription, and is therefore now estopped to deny his liability upon his subscription. This contention is fully considered in the cases to which we have referred, and they hold that the doctrine of estoppel can never be invoked to confer corporate powers, which by statute can only be conferred in a certain way, and the party's direct and affirmative act could not make an invalid act valid and binding. If anyone has been misled by false statements, representations, or actions, they may seek relief against those misleading them as individuals, but not as stockholders, a relation which neither they nor the corporation could establish in any other than the statutory manner. *Winters* v. *Armstrong*, 37 Fed. Rep., 520; *Scovill* v. *Thayer*, 105 U. S., 143; *Charleston* v. *Bank*, 5 Rich Law (N. S.), 103; *Schierenberg* v. *Stephens*, 32 Mo. App., 314; *Tube Works* v. *Machine Co.*, 139 Mass., 9–11.

Railroad *v.* Sneed.

In this case, no creditor has been misled by the increase, for there are none, and neither the public nor other subscribers are in any way injured or prejudiced, so far as the record discloses. The increase being unwarranted, and improperly made, is illegal and void, and the defendant has the right to defend against liability therefor. *Anderson* v. *Railroad,* 7 Pickle, 44; *Cartwright* v. *Dickinson,* 4 Pickle, 476.

It will be assumed that Sneed expected the company to comply with the statute, so as to make the increase of its stock legal, and his payments into the treasury cannot be considered a waiver upon his part that such requirements would be complied with. It appears that no stock has been issued to him, or to anyone else, under the increase. It does not appear that the company can legally issue such stock. Certainly any one of the original subscribers to the $27,000, which was regularly subscribed, could enjoin the issuance of the increased stock.

We are of opinion that the estate of W. M. Sneed cannot be held responsible in this action for the unpaid balance of subscription sued for, and the decree of the Court below is reversed, and bill dismissed, at cost of complainants in both Courts.

———

OPINION ON PETITION TO REHEAR.

WILKES, J. Upon petition to rehear it is urged upon us that on the original hearing the Court did

not consider Sec. 5 of the general incorporation Act of 1875, which permits an increase of capital stock by by-law. This is true, from the fact that Sec. 5 relates to corporations generally, while Sec. 6 relates to railway companies and the increase of capital stock by railways, and this section is made part of the charter of complainant, and is the law under which it was organized and operates. It is also called to our attention that the proof shows that the corporation is in debt to the extent of ten or twelve thousand dollars. This is also true, but it likewise appears that it owns some tracks and real estate representing over $95,000. The bill does not allege any indebtedness or the necessity of collecting the subscription to pay debts, and no creditor appears in the record in any way seeking to collect anything from the company or from W. M. Sneed.

Our attention is also called to the case of *Peck & McGuffey, Receivers,* v. *J. M. Elliott, Jr.,* decided in the United States Circuit Court for the Eastern District of Tennessee, on the second of March, 1897, by Judges Taft, Lurton, and Sage. It is insisted that this case is in point, and persuasive in favor of the binding obligation of this subscription. We have examined the case critically. The proceeding was one affecting the property of the Southern Malleable Iron Company, a manufacturing corporation chartered under the Acts of 1875, Ch. 142, Sec. 11, but incorrectly stated in the opinion to be Ch. 97 of said Acts. The object of

the bill was to preserve the entity of the property
as an operative unit plant, collect its debts, com-
plete certain valuable contracts, and then sell the
property as a whole, including its good will, for
the satisfaction of all its debts according to priority
of liens. The bill was brought by receivers, in
whose hands it had been placed at the instance of
a judgment creditor, as an insolvent concern, and
the bill was essentially a bill to wind up an insol-
vent corporation for the benefit of its creditors.
Elliott, a director and the president of the com-
pany, was made a defendant, and it was attempted
to collect from him a balance of unpaid subscription,
upon the ground that the insolvency of the com-
pany and pressing of creditors rendered such action
necessary. Elliott, among other grounds, defended
upon his contention that his subscription was to in-
creased stock, which the corporation had no power
to authorize or collect.

The provisions of Sec. 5 of the general incorpo-
ration Act of 1875 were considered as applicable,
but not those of Sec. 6, inasmuch as the corpora-
tion then before the court was not a railway, but
a manufacturing corporation. The court below held
that the proper construction of Sec. 5, and of the
Act referred to, was that while the corporation
could fix its capital stock by by-law, yet, when
once fixed, it must remain fixed, and could not be
either increased or diminished by a subsequent by-
law. The provision of Sec. 5 is substantially that

"the corporation may, by by-laws, make regulations concerning the subscription for or transfer of stock, fix upon the amount of capital to be invested in the enterprise, the division of the same into shares, the time required for payment thereof by subscribers for stock, the amount to be called for at any one time." There is no special provision as to the increase of the capital stock of a manufacturing corporation chartered under Sec. 11 of the Act, as there is of a railway corporation chartered under Sec. 6 of the same Act. The question considered in the case was whether such manufacturing corporation had power to increase its capital after it had once been fixed by by-law. The conclusion reached in the case was that when the corporation has the power by by-law to fix its capital, it may, by the same means, increase its capital, and that the Act of March 27, 1883, Ch. 163, did not take away this power. But that case does not pass upon the manner of making the increase effective, except that it may be done by by-law, or, as elsewhere stated, by a resolution of the members of the incorporation, but it does not refer to the provisions of Sec. 19, which provides that the directors shall copy the desired amendment, make formal application to the State, have the amendment probated and registered, and the registration certified by the Secretary of State, under the great seal of State. This we hold to have been the necessary ceremony to be performed in order to make the increase of stock valid

and effectual under that Act, and so long as it re-
mained in force, if we concede that it might be au-
thorized by by-law or resolution.    In other words,
although the power to increase by by-law or reso-
lution may have existed under the Acts of 1875,
Ch. 142, still it must be exercised according to the
provisions of the Acts of 1883, Ch. 163, and in the
manner there prescribed, while said Act was in force.
The requirements of the Acts of 1883, Ch. 163, not
having been complied with, the increase was not
validly made, even if we concede that it might be
changed after being once fixed.

The petition to rehear is therefore dismissed.